UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PATRICIA S. PEREZ, individually and on behalf of
her minor child I.R.,

Plaintiff,

-against-

NEW PALTZ CENTRAL SCHOOL DISTRICT and
DR. MARIO FERNANDEZ, in his official capacity
as the principal of the New Paltz High School,

Defendants.

**Civil Case No.: 1:21-cv-706
(DNH/CFH)**

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

---

JOHNSON & LAWS, LLC
*Attorneys for Defendant*
Office and P.O. Address
646 Plank Road, Suite 205
Clifton Park, New York 12065
Tel:    518-490-6428

Of Counsel:

Loraine C. Jelinek, Esq. (700354)
Gregg T. Johnson, Esq. (506443)

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT AND RELEVANT FACTUAL BACKGROUND ...............1

   A.   Plaintiff's June 15, 2021 Complaint ........................................................................ 1

   B.   Plaintiff's Legal Challenges to New York State Law ............................................. 3

   C.   Relevant Factual Background ................................................................................. 6

   D.   New York State's Vaccination Laws ...................................................................... 9

ARGUMENT ............................................................................................................................14

   Standard of Review ...............................................................................................14

   POINT I    PLAINTIFFS' CLAIMS ARE DEMONSTRABLY NOT
                  RIPE FOR ADJUDICATION ....................................................................15

   POINT II   THE COURT LACKS JURISDICTION OVER PLAINTIFFS'
                  SPECIFIC PRAYERS FOR RELIEF .........................................................18

   POINT III  PLAINTIFF-PATRICIA PEREZ LACKS STANDING TO
                  PURSUE CERTAIN CLAIMS ON HER OWN BEHALF .........................20

   POINT IV  ALL CLAIMS AGAINST FORMER NPCSD HIGH SCHOOL
                  PRINCIPAL MARIO FERNANDEZ MUST BE DISMISSED ................21

   POINT V   PLAINTIFFS HAVE FAILED TO ESTABLISH SECTION 1983
                  *MONELL* LIABILITY AGAINST THE NPCSD .........................................23

          A.   The allegations in the Complaint explicitly confirm
               that Plaintiffs have sued the wrong parties in this action ...................26

   POINT VI  PLAINTIFFS' SIXTY-EIGHT (68) CAUSES OF ACTION
                  AGAINST THE NPCSD ARE MERITLESS AND FAIL TO
                  STATE A CLAIM PURSUANT TO FRCP RULE 12(b)(6) ......................28

          A.   Plaintiffs' substantive due process claims fail as a matter of law ......29
          B.   Plaintiffs' right to education claims fail as a matter of law ................33
          C.   Plaintiffs' free exercise of religion clams fail as a matter of law .......35
          D.   Plaintiffs' parental choice, informed consent, and bodily
               integrity claims all fail as a matter of law ..........................................37

CONCLUSION ........................................................................................................................40

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Abbott Labs. V. Gardner,*
387 U.S. 136 (1967)..................................................................................................15, 16

*Al-Jimdi v. Estate of Nelson Rockefeller,*
885 F.2d 1060 (2d Cir. 1989) ...............................................................................21, 22

*Ameduri v. Vill. of Frankfort,*
2014 U.S. Dist. LEXIS 202569 (N.D.N.Y. 2014) ........................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ...........................................................................................15

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
426 F.3d 635 (2d Cir. 2005) .........................................................................................14

*Barmore v. Aidala,*
419 F. Supp. 2d 193 (N.D.N.Y. 2005)......................................................................1, 23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................................15

*Boddie v. Morgenthau,*
342 F. Supp. 2d 193 (S.D.N.Y. 2004) ....................................................................21, 22

*Booker v. Board of Education, Baldwinsville Central School District, et al.,*
238 F.Supp.2d 469 (N.D.N.Y. 2002).............................................................................23

*Canale v. Colgate-Palmolive Co.,*
258 F. Supp. 3d 312 (S.D.N.Y. 2012) ...........................................................................20

*Caviezel v. Great Neck Pub. Sch.,*
500 F. App'x 16 (2d Cir. 2012) .....................................................................................30

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)......................................................................................................31

*Doe v. Zucker*,
2021 U.S. Dist. LEXIS 28937 (N.D.N.Y. 2021) ........... 4, 20, 25, 28, 30, 31, 32, 33, 34, 37-38, 39

*Dougherty v. Town of N Hempstead Bd of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002) ........................................................................................17

*Dow Jones & Co. v. Harrods, Ltd.*,
237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) ..................................................................19

*EEOC v. Port Auth.*,
78 F.3d 247 (2d Cir. 2014) ........................................................................................15

*F.F. v. N.Y.*,
194 A.D.3d 80 (3d Dep't 2021)................................................................................4, 37

*F.F. v State of New York*,
66 Misc. 3d 467 (Sup. Ct. 2019)..................................................................................37

*Frank v. Relin*,
1 F.3d 1317 (2d Cir. 1993) ....................................................................................1, 22

*Graham-Johnson v. City of Albany*,
2021 U.S. Dist. LEXIS 79269 (N.D.N.Y. 2021) ...........................................................14

*Hafer v. Melo*,
112 S. Ct. 358 (1991).............................................................................................1, 22

*Hulett v. City of Syracuse*,
253 F. Supp. 3d 462 (N.D.N.Y. 2017)..........................................................................22

*Immediato v. Rye Neck Sch. Dist.*,
73 F.3d 454 (2d Cir. 1996) ...................................................................................29, 37

*In re Edgewell Personal Care Co. Litig.*,
2018 U.S. Dist. LEXIS 209023 (E.D.N.Y. 2018) ........................................................20

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905).............................................................. 4, 25, 28-29, 38, 39

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989)..................................................................................................23

*L.A. County v. Humphries*,
562 U.S. 29 (2010)....................................................................................................24

*Laurel Hill Cemetery v. San Francisco*,
216 U.S. 358 (1910)..............................................................................30

*Liberman v. Van de Carr*,
199 U.S. 552 (1905)..............................................................................30

*Loren v. Levy*,
2003 U.S. Dist. LEXIS 4903 (S.D.N.Y. 2003)...........................................21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................21

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ..................................................................14

*Marshall v. Switzer*,
900 F. Supp. 604, 615 (N.D.N.Y. 1995)..................................................21

*Mason v. General Brown Cent. School Dist.*,
851 F.2d 47 (2d Cir. 1988) ...............................................................35-36

*Mayor v. City Council of Balt. V. Citigroup, Inc.*,
79 F.3d 129 (2d Cir. 2013) ....................................................................15

*McCarthy v. Ozark Sch. Dist.*,
359 F.3d 1029 (8th Cir. 2004) ....................................................17, 18, 19

*McCluskey v. Imhof*,
2018 U.S. Dist. LEXIS 161998 (E.D.N.Y. 2018) ................................18, 24

*Molinari v. Bloomberg*,
564 F.3d 587 (2d Cir. 2009) ..................................................................29

*Monell v. Dep't of Soc. Serv. of New York*,
436 U.S. 658 (1978)..............................................................................23

*Morales v. City of New York*,
752 F.3d 234 (2d Cir. 2014) ..................................................................24

*Murphy v. New Milford Zoning Comm'n*,
402 F.3d 342 (2d Cir. 2005) ............................................................17, 18

*N. American Airlines, Inc. v. Int'l Bhd. Of Teamsters Local 747*,

2005 U.S. Dist. LEXIS 4385 (S.D.N.Y. 2005)..............................................................19

*Natale v. Town of Ridgefield,*
170 F.3d 258 (2d Cir. 1999) .........................................................................................31

*Nat'l Org. for Marriage, Inc. v. Walsh,*
714 F.3d 682 (2d Cir. 2013) .........................................................................................15

*New York Immigration Coalition v. Rensselaer Cty. Bd. of Elections,*
2019 U.S. Dist. LEXIS 204717 (N.D.N.Y. 2019) ............................................14, 16, 21

*New York State Asso. for Retarded Children, Inc. v. Rockefeller,*
357 F. Supp. 752 (E.D.N.Y. 1973) ................................................................................34

*Nutritional Health Alliance v. Shalala,*
144 F.3d 220 (2d. Cir. 1998) ........................................................................................15

*Patterson v. County of Oneida,*
375 F.3d 206 (2d Cir. 2004) .........................................................................................23

*Phillips v. City of New York,*
775 F.3d 538 (2d Cir. 2015) ..................................... 4, 25, 26, 28-29, 30, 33, 34, 36, 37, 38

*Plyler v. Doe,*
457 U.S. 202 (1982).................................................................................................28, 33

*Prince v. Massachusetts,*
321 U.S. 158 (1944)..............................................................................................4, 37, 39

*Reno v. Flores,*
507 U.S. 292 (1993)........................................................................................................29

*Rivendell Winery, LLC v. Town of New Paltz,*
725 F. Supp. 311 (N.D.N.Y. 2010)................................................................................17

*Rubeor v. Town of Wright,*
191 F.Supp.3d 198 (N.D.N.Y. 2016).............................................................................22

*Ryan Klaassen, et al. Applicants v. Trustees of Indiana University,*
Dkt. No. 21-2326, Appl. No. 21A15 (Aug. 12, 2021)...............................................5, 31

*Saleh v. Holder,*
84 F. Supp. 3d 135 (E.D.N.Y. 2014) ............................................................................14

*San Antonio Indep. Sch. Dist. v. Rodrignez,*
411 U.S. 1 (1973) ........................................................................34

*Scalpi v. Town of E. Fishkill,*
2016 U.S. Dist. LEXIS 24530 (S.D.N.Y. 2016) ................................23, 24

*Schallop v. New York State Dep't of Law,*
20 F. Supp. 2d 384 (N.D.N.Y. 1998) ................................................22

*Segal v. City of New York,*
459 F.3d 207 (2d Cir. 2006) ..........................................................24

*Sensational Smiles, LLC v. Mullen,*
793 F.3d 281 (2d Cir. 2015) ..........................................................32

*Strubel v. Comenity Bank,*
842 F.3d 181 (2d Cir. 2016) ..........................................................21

*Surplus Store and Exch., Inc. v. City of Delphi,*
928 F.2d 788 (7th Cir. 1991) .........................................................24

*Textron Lycoming Reciprocating Engine Div. v. United Auto,*
523 U.S. 653 (1998) ....................................................................19

*Thomas v. City of New York,*
143 F.3d 31 (2d Cir. 1998) ......................................................14, 16, 17

*Thomas v. Union Carbide Agric. Prods. Co.,*
473 U.S. 568 (1985) ....................................................................17

*Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco,*
2019 U.S. Dist. LEXIS 50676 (S.D.N.Y. 2019) ...................................17

*Vaher v. Town of Orangetown,*
133 F. Supp. 3d 574 (S.D.N.Y. 2015) ..............................................24

*V.D. v. New York,*
403 F. Supp. 3d 76 (E.D.N.Y. 2019) ......................4, 6, 13, 26, 33, 36

*Vives v. City of New York,*
524 F.3d 346 (2d Cir. 2008) ..........................................................24

*Watkins-El v. Dep't of Educ.,*
2016 U.S. Dist. LEXIS 139860 (E.D.N.Y. 2016) ..............................36, 37

*W.D. v. Rockland Cty.*,
2021 U.S. Dist. LEXIS (S.D.N.Y. 2021) ................................................................................ 4

*Whitesel v. Sengenberger*,
222 F.3d 861 (10th Cir. 2000) ............................................................................................ 24

*Whitlow v. California*,
203 F. Supp. 3d 1079 (S.D. Ca. 2016) ................................................................................ 36

*Workman v. Mingo Cty. Bd. of Educ.*,
419 F. App'x 348 (4th Cir. 2011) ........................................................................................ 36

*Zachary v. Clinton Cty.*,
2003 U.S. Dist. LEXIS 26596 (N.D.N.Y. 2003) .................................................................. 22

*Zucht v. King*,
260 U.S. 174 (1922) .......................................................................................... 4, 25, 28, 30

**Federal Authorities:**

Article III of the U.S. Constitution ...................................................................................... 17

Childhood Vaccine Injury Act .............................................................................................. 19

Declaratory Judgment Act .................................................................................................... 19

42 U.S.C. § 1983 ......................................................................................... 1, 3, 18, 23, 24, 26

FRCP Rule 12(b) ................................................................................................................... 27

FRCP Rule 12(b)(1) .................................................................................................. 1, 14, 15, 40

FRCP Rule 12(b)(6) .................................................................................................. 1, 14, 15, 40

**New York State Authorities:**

C.P.L.R. Article 78 ................................................................................................................. 2

N.Y. Pub. Health L. § 12-B(2) ............................................................................................. 13

N.Y. Pub. Health L. § 2164 ................................................................... 2, 4, 6, 10, 23, 29, 32, 36

N.Y. Pub. Health L. § 2164(7) .............................................................................................. 13

N.Y. Pub. Health L. § 2164(7)(a) ........................................................................13, 26

N.Y. Pub. Health L. § 2164(8)........................................................................9, 32

N.Y. Pub. Health L. § 2164(8)(a) ...........................................................................13

N.Y. Pub. Health L. § 2805-d(1) ............................................................................40

N.Y. Edu. L. § 101......................................................................................................9

N.Y. Edu. L. § 305......................................................................................................9

10 NYCRR § 66-1.1 .......................................................................2, 23, 29-30, 32

10 NYCRR § 66-1.1(l) .........................................................................9, 10, 32

10 NYCRR 66-1.3 .......................................................................................9

N.Y. Assy. Bill No. 2371, Legis. S. 247 (May 22, 2019)............................................35

**Other Authorities:**

*General Best Practice Guidelines for Immunization: Best Practices Guidance of the Advisory Committee on Immunization Practices (ACIP)*, THE CENTERS FOR DISEASE CONTROL AND PREVENTION     https://www.cdc.gov/vaccines/hcp/acip-recs/general-recs/downloads/general-recs.pdf (last visited August 15, 2021) ...........................................................10, 11, 12

*Statement on Legislation Removing Non-Medical Exemptions from School Vaccination Requirements*, NEW YORK STATE DEPARTMENT OF HEALTH, (June 14, 2019) https://www.health.ny.gov/publications/2170/docs/new_legislation_joint_statement.pdf,..........12

*Medical Exemption Review Procedures for Schools Outside New York City and for Non-public Schools in New York City*, New York State Department of Health (October 2020), https://www.health.ny.gov/professionals/doctors/conduct/docs/medical_exemption_review_procedures_for_schools.pdf ............................................................................12, 13

*Dear Superintendent/Principal/School Nurse Regarding Public Health Law 2164(7)(a)*, NEW YORK STATE DEPARTMENT OF HEALTH, (last revised August 2019), https://www.health.ny.gov/prevention/immunization/schools/public_health_law_section_2164_letter.htm ...........................................................................13

## PRELIMINARY STATEMENT
## AND RELEVANT FACTUAL BACKGROUND

Defendant, the New Paltz Central School District[1] (hereinafter referred to as the "NPCSD"), by and through its counsel, *Johnson & Laws, LLC*, submits this Memorandum of Law in support of the NPCSD's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6), seeking dismissal of Plaintiffs' June 15, 2021 Complaint (ECF No. 1) in its entirety.  Plaintiff, Patricia S. Perez (hereinafter "Plaintiff" or "Perez") commenced the instant action against the NPCSD and its former principal by filing a Complaint (ECF No. 1) purportedly on her own behalf and on behalf of her sixteen-year-old child "I.R." (hereinafter collectively referred to as "Plaintiffs").

*A.*   ***Plaintiffs' June 15, 2021 Complaint:***  The Complaint filed by Plaintiffs in this action is remarkable not only because in includes more than four-hundred and eighty-two (482) paragraphs and consumes one-hundred and sixteen (116) pages, but it is equally remarkable for what it does not include.  For example, out of the more than 482 paragraphs, only thirteen (13) paragraphs (or 2.7%) include factual allegations concerning Plaintiffs or the NPCSD (*see* ECF No. 1 ¶¶ 16, 33-42, 127-128).   With respect to the allegations regarding the Defendant-NPCSD, Plaintiffs' Complaint astonishingly fails to advance any factual contentions against either the NPCSD or its former principal apart from identifying these NPCSD parties (*id.* at 1, 11 ¶ 26).  Moreover, Plaintiffs' verbose Complaint fails to include any factual allegations that, *inter alia*: 1) identify any policy, custom, or practice of the NPCSD, as distinguished from the New York State

---

[1] The NPCSD is also sued herein as "Dr. Mario Fernandez, in his official capacity as the Principal of the New Paltz High School."  (ECF No. 1 at 1).  As further analyzed below (*see infra* POINT IV), Courts in this Circuit have consistently recognized that § 1983 claims against individual defendants sued in their "official capacities" are equivalent and redundant to the claims alleged against the municipal entity.  *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) (quoting *Hafer v. Melo*, 112 S. Ct. 358, 361 [1991]); *Barmore v. Aidala*, 419 F. Supp. 2d 193, 202 (N.D.N.Y. 2005).

statutes or regulations that allegedly violated Plaintiffs' purported rights; 2) describe how any policy, custom, or practice of the NPCSD, as distinguished from the New York State statutes or regulations, was causally related to any alleged constitutional injury sustained by Plaintiffs; 3) identify any specific "state action" by the NPCSD or its former principal (let alone any "egregious" or "outrageous" state action) that purportedly deprived Plaintiffs of any constitutional right; 4) describe Plaintiffs' attempt to apply for a medical exemption from the NPCSD pursuant to NYS PHL § 2164 and 10 NYCRR 66-1.1, NPCSD's denial of any medical exemption request, Plaintiffs' appeal of any determination by the NPCSD to the New York State Commissioner of Education, or Plaintiffs' challenge of such determination by initiating a CPLR Article 78 proceeding; 5) allege that NPCSD was responsible, as distinguished from various Federal and New York State agencies, for I.R.'s inability to lawfully attend school; 6) identify or describe any sincerely-held religious belief that requires Plaintiffs to selectively choose which vaccinations I.R. should be administered; 7) describe how Plaintiffs lack informed consent regarding the challenged vaccinations; or 8) identify a fundamental right of Plaintiffs that has allegedly been violated by the challenged NYS statutes or regulations.

What Plaintiffs' prolix Complaint does include are hundreds and hundreds of superfluous and immaterial paragraphs containing: 1) theoretical and opinionated scientific contentions (ECF No. 1 ¶¶ 4-13, 15, 43-124, 129); 2) redundant and repetitive claims and allegations alleging that I.R.'s right to "bodily integrity" was somehow violated (*id.* at ¶¶ 130-38, 174-85, 212-21, 256-67, 302-10, 345-62, 393-95, 410-14, 432-37, 462-71); 3) redundant and repetitive claims and allegations positing that Plaintiffs' rights to "informed consent" were somehow violated (*id.* at ¶¶ 139-44, 186-89, 222-27, 268-73, 311-16, 363-66, 396-98, 415-19, 438-41, 472-74); 4) redundant and repetitive claims and allegations claiming that Ms. Perez's right to "parental choice" was

2

somehow violated, even when she elected not to have I.R. fully-vaccinated and chose instead to provide homeschooling instruction (*id.* at ¶¶ 145-49, 190-94, 228-32, 274-78, 317-21, 367-70, 399-401, 420-24, 442-45, 475-77); 5) redundant and repetitive claims and allegations claiming that Plaintiffs' substantive due process rights were somehow violated, even when Plaintiffs have failed to plead any unlawful "actions" allegedly taken by the NPCSD (*id.* at ¶¶ 279-89, 322-32, 371-74, 388-92, 404-09, 446-51, 478-82); 6) redundant and repetitive claims and allegations claiming that Plaintiffs' rights to freely exercise their religion were somehow violated, even when Plaintiffs conceded to previously misusing New York State's prior religious exemption as a so-called "release valve" for circumventing New York State's school vaccination laws (*id.* at ¶¶ 161-66, 200-04, 244-48, 290-94, 333-37, 371-80, 425-29, 452-61); and 7) redundant and repetitive claims and allegations that I.R.'s right to pursue a free public education was somehow violated, even in light of Ms. Perez's election to not have I.R. fully-vaccinated (*id.* at ¶¶ 167-71, 205-09, 249-53, 295-99, 338-42, 381-85).

Remarkably, as further discussed below, the allegations in the Complaint explicitly acknowledge (at length) that numerous Federal and New York State agencies are the entities responsible for the claims that Plaintiffs alleged above—***not*** the NPCSD (*id.* at ¶¶ 15, 17-18, 57, 60, 63 n.1, 64, 67, 69-76, 80, 84, 86-89, 93, 100-101, 105-108, 113 115, 116-119, 122, 129, 359, 389-390, 392, 407, 427, 436, 465, 467, 470).  As such, Plaintiffs' Complaint constitutes nothing more than a demand against NPCSD to permit I.R. to attend school in violation of applicable New York State Laws—which demand does not (and cannot) support a plausible § 1983 claim.

**B.    *Plaintiffs' Legal Challenges to New York State Law:***  While Plaintiffs' Complaint ostensibly attempts to present an "as applied challenge" against the NPCSD, the actual allegations contained in the Complaint make clear that the gravamen of Plaintiffs' claims constitute a facial

challenge to the constitutionality of New York State's vaccination laws and regulations. Such challenges to New York State's current vaccination laws (irrespective of whether such challenges are facial or "as applied"), even in the wake of New York's 2019 abolition of the religious exemption, are not new. *See e.g.*, *Jacobson v. Massachusetts*, 197 U.S. 11, 37 (1905) (setting the applicable precedent that challenges to states' immunization laws trigger only a rational basis review); *Zucht v. King*, 260 U.S. 174, 176 (1922) (affirming the holding in *Jacobson* and underscoring that vaccination laws are within states' police power); *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) (holding same with respect to the decision in *Jacobson*); *Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir. 2015) (upholding *Jacobson* and the rational basis review standard in the Second Circuit); *F.F. v. N.Y.*, 195 A.D.3d 80  (3d Dep't 2021) (rejecting a challenge to the constitutionality of New York's Public Health Law § 2164 following the New York's repeal of the religious exemption); *W.D. v. Rockland Cty.*, 2021 U.S. Dist. LEXIS, *29, 58 (S.D.N.Y. 2021) (holding that parents did not have a property right to send their unvaccinated children to public school and that rational basis review was proper in light of New York State's facially-neutral Public Health Laws and regulations); *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937, *83, 107, 110-11 (N.D.N.Y. 2021) (J. Sannes) (granting defendants' Rule 12(b)(6) motion to dismiss and rejecting plaintiffs' substantive due process, equal protection, informed consent, parental choice, right to an education, "unconstitutional conditions," and disability-based discrimination challenges to New York State's amended vaccination laws and regulations); *V.D. v. New York*, 403 F. Supp. 3d 76, 80, 83-84 (E.D.N.Y. 2019) (rejecting plaintiff-parents' IDEA challenge to New York State's Public Health Law § 2164).

Only a few days ago, the United States Supreme Court struck down students' challenges to Indiana State's mandate that all students be vaccinated against the coronavirus prior to being

permitted to enroll in Indiana University. *Ryan Klaassen, et al., Applicants v. Trustees of Indiana University*, Dkt. No. 21-2326, Appl. No. 21A15 (Aug. 12, 2021) (Justice Barrett). The holding in *Klaassen* is significant since the case came up from the Seventh Circuit where the standard in *Jacobson* was, again, relied upon in the court's finding that the state's immunization laws were a constitutional exercise of state police power. *Klaassen v. Trs. of Ind. Univ.*, 2021 U.S. App. LEXIS 22785, *4-5 (7th Cir. 2021). The *Klaassen* court reiterated that "[e]ach university may decide what is necessary to keep other students safe in a congregate setting," and specifically indicated that it is well within the states' authority to enact and enforce laws requiring vaccination from "measles, mumps, rubella, diphtheria, tetanus, pertussis, varicella, meningitis, influenza, and more." *Id.* at *3. The court in *Klaassen* rejected the plaintiff-students' substantive due process, bodily integrity, and right to education claims, reiterating that *Jacobson's* rational basis standard was satisfied and, if certain students do not wish to be vaccinated, they "may go elsewhere." *Id.*

Plaintiffs' Complaint in the instant matter fares no better than the numerous other unsuccessful challenges to state officials' authority to draft, enact, delegate, and enforce school vaccination requirements. In fact, the allegations (or lack thereof) in Plaintiffs' Complaint pale in comparison to the more "robust" immunizations challenges that were, nonetheless, consistently, and repeatedly rejected by the courts. Accordingly, for all of the foregoing and following reasons, Plaintiffs' Complaint before this Court must be dismissed, in all respects, as a matter of law.

*C.*   ***Relevant Factual Background:*** As reflected by Plaintiffs' prolix Complaint, Perez alleges that I.R. is a student residing in the geographic area served by the NPCSD (ECF No. 1 at ¶ 26). According to the Complaint, Perez has certain "concerns" regarding administering the final "booster" of the DTaP vaccine (an FDA-approved formulated vaccination that protects against the infections/diseases of diphtheria, tetanus, and pertussis), and the final "booster" of the FDA-

approved polio vaccine to I.R. (*id.* at ¶¶ 1, 16).  With the exception of these two vaccines, I.R., who is now sixteen (16) years old, has received every other immunization required by New York State's school vaccination laws (*id.* at ¶ 1).  Perez's alleged refusal to administer these final two vaccines to I.R. purportedly stems from Perez's "concerns" that I.R. has experienced "allergy symptoms" and "other nervous system disorder" since she was a pre-vaccinated infant (*id.* at ¶¶ 16, 29).  Yet, Plaintiffs never submitted a request to the NPCSD for a medical exemption.

Plaintiffs admit to misusing the former religious exemption previously dictated in § 2164 of the New York State Public Health Law ("PHL"), until such exemption was repealed by the New York State Legislature on June 13, 2019 due to recent outbreaks of certain highly-contagious, potentially fatal diseases in which New York State was found to be a "driving force" to same. *See* N.Y. Assy. Bill No. 2371, Legis. S. 247 (May 22, 2019); *V.D.*, 403 F. Supp. at *80-81; (ECF No. 1 at ¶¶ 18-19, 118, 125, 128).  Plaintiffs categorize their apparently improper use of NYS PHL's former religious exemption as being the so-called "release valve" for the alleged "gap in scientific knowledge" Plaintiffs' theorize exists with respect to the challenged vaccines (ECF No. 1 at ¶¶ 18, 128-129).  The Complaint further alleges that Perez has elected to homeschool I.R. (as she has done in the past for unrelated reasons) since Plaintiffs are no longer able to (mis)use NYS PHL's former religious exemption (*id.* at ¶¶ 34-35).  As indicated above, the Complaint is devoid of any allegations that Plaintiffs ever completed or submitted a medical exemption request to the NPCSD, or that NPCSD ever reviewed or denied same.

Interestingly, Plaintiffs' Complaint is comprised of many allegations that directly belie and undermine the claims asserted against the NPCSD.  As noted above, some of the most remarkable aspects of the Complaint include Plaintiffs' explicit acknowledgment that various Federal and New York State agencies, as well as private pharmaceutical manufacturers, are responsible for

Plaintiffs' alleged injuries in not being able to lawfully attend school—**not** the NPCSD (*see e.g.*, *id.* at ¶¶ 15, 17-18, 57, 60, 63 n.1, 116-117). While the pleadings admit that Plaintiffs have provided New York State with contemporaneous "notice" of their Complaint, Plaintiffs perplexingly have not named New York State (or any Federal, State, or pharmaceutical entities) as Defendants in this litigation (*id.* at ¶ 27). Also prominent in Plaintiffs' Complaint are the allegations which emphasize the pure speculation underlying Plaintiffs' scientific and medical theories, as well as Plaintiffs' unusual and provocative assumptions that this Court will not act as an impartial decisionmaker when analyzing and applying the applicable law—going so far as to surmise that this Court will "dehumanize" Plaintiffs (*id.* at ¶¶ 22-23, 84, 92, 100, 102, 127, 434, 468, 470). These curious allegations in Plaintiffs' Complaint include, *inter alia*, the following:

- "The NYSDOH [not the NPCSD] nonetheless demands that plaintiffs and all other New Yorkers believe their vaccine claims and submit to such vaccines or else be expelled from school." (ECF No. 1 at ¶ 116);

- "New York legislators [not the NPCSD] have removed the concept of informed consent for any parent that wants their child to attend school in this state without injecting the vaccines at issue in this complaint." (*id.* at ¶ 15);

- "New York State and the NYSDOH rely on the United States Department of Health & Human Services ("HHS") and the Centers for Disease Control & Prevention ("CDC") [not the NPCSD] to claim that vaccines are safe. This is because the 1986 Act made HHS, and its agencies, including the CDC, solely responsible for vaccine safety." (*id.* at ¶ 60);

- Plaintiffs' opinion that "[d]espite the 1986 Act making HHS responsible for vaccine safety, it has failed to fulfill this duty, with regard to these vaccines." (*id.* at ¶ 87);

7

- Plaintiffs' opinion that the federal "vaccine court" "greatly limits HHS's incentive to publish safety studies that may support that DTaP/Tdap or IPV causes a given harm." (*id.* at ¶ 76);

- Plaintiffs' opinion that the "HHS and CDC have failed to conduct studies to identify children susceptible to vaccine harms." (*id.* at ¶ 101);

- Plaintiffs' opinion that "[t]he CDC publicly hides behind the claim that no causation has been proven" with respect to certain vaccinations. (*id.* at ¶ 93);

- Plaintiffs' opinion that "the pharmaceutical industry remains accountable for safety and liable in civil court for injuries caused by the drugs they put on the market." (*id.* at ¶ 84);

- Plaintiffs' opinion that "the research has not yet been done to know which children are susceptible" to alleged vaccine harms." (*id.* at ¶ 239);

- Perez's admissions that her "concerns" regarding the challenged vaccinations "may or may not be related to" I.R.'s purported medical conditions. (*id.* at ¶ 127);

- Acknowledgment that it has not been found that vaccines or vaccine products actually cause the allegedly most-commonly claimed medical "conditions" (*id.* at ¶ 434);

- Plaintiffs' opinions that various social media platforms and corporations, such as Facebook, Amazon, and elected New York State officials (not the NPCSD), allegedly censor stories about vaccine harms (*id.* at ¶¶ 20-22); and

- Plaintiffs' presumptuous allegations that this Court should set aside "all preconceived notions regarding [vaccine] products. That the dehumanization of Plaintiff and her child be set aside." (*id.* at ¶ 21). Additionally, that this Court should not afford "special treatment" to the Federal and State agencies—not the NPCSD—that are mentioned (but not sued as Defendants) throughout Plaintiffs' Complaint. (*id.* at ¶¶ 23-24).

As the foregoing allegations reveal, despite the incredibly prolix nature of Plaintiffs' Complaint, the factual allegations asserted therein are comprised of only: 1) irrelevant and immaterial facts which explicitly do not involve actions of the NPCSD; 2) inflammatory accusations against this Court and several non-parties; and 3) purely speculative (and biased) medical and scientific hypotheses. Accordingly, Plaintiffs' Complaint cannot survive NPCSD's instant motion to dismiss.

**D.   *New York State's Vaccination Laws:*** As indicated above, Plaintiffs' Complaint attempts to present a challenge to the New York State school vaccination program, particularly in the wake of New York State's June 13, 2019 abolition of the prior religious exemption that many public-school students, including I.R., previously claimed (ECF No. 1 at ¶¶ 18, 128-129). Curiously, Plaintiffs have not sued the State (which drafted and enacted the mandatory vaccination laws) nor the New York State Departments of Health or Education (which promulgated regulations and maintains the authority to enforce the state vaccination laws). It is undisputed that individual school districts, like the NPCSD, must abide by these state laws. *See* N.Y. Edu. Law §§ 101, 305.

Under 10 NYCRR 66-1.3 (the challenged NYS regulations), students must satisfy certain requirements to obtain a medical exemption to the mandatory school vaccination laws. Students seeking a medical exemption must submit a medical form signed by a New York State licensed physician. *See* 10 NYCRR 66-1.3. This medical form must: 1) certify that a specific immunization may be detrimental to the child's health; 2) contain sufficient information to identify a medical contraindication or precaution to a specific immunization; and (3) specify the length of time the immunization is medically contraindicated. *See id.* These NYS requirements are not new. What is relatively new to NYS's medical exemption process is the definition of what "may be detrimental to the child's health." *See* 10 NYCRR 66-1.1(1); PHL§ 2164(8). The relatively new

state regulations now require a physician to determine "that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standards of care." *See* 10 NYCRR 66-1.1(l). Plaintiffs do not challenge this specific definition added to NYS's Public Health Laws. Rather, they contend that limited portions of PHL § 2164 and 10 NYCRR 66-1.1(f) be comprehensively declared unconstitutional to the extent that these provisions of New York State's Laws require schoolchildren to receive the DTaP and polio vaccines (*see e.g.*, ECF No. 1 at ¶ 138). Moreover, as further discussed below, Plaintiffs curiously ignore the fact that 10 NYCRR 66-1.1(l) also provides medical exemptions for "other nationally recognized evidence-based" medical contraindications or precautions. *See id.*

The Centers for Disease Control and Prevention ("CDC"), a federal agency operating under the U.S. Department of Health and Human Services ("USDHHS"), recommends routine vaccines to fight against 17 vaccine-preventable diseases.[2] The CDC specifically recommends vaccines for younger people because they are more at risk of developing certain vaccine-preventable diseases. *Id.* at 11. The Advisory Committee on Immunization Practices General Recommendations Work Group ("ACIP") releases updated "best practice guidelines" every three to five years. *Id.* at 5. This group is comprised of a diverse group of health care professionals, experts, and public health officials. *Id.* The NYS Legislature reasonably collaborated and deferred to this group of experts in amending the regulations for NYS's mandatory school vaccinations. *See* 10 NYCRR 66-1.1(l).

---

[2] *See General Best Practice Guidelines for Immunization: Best Practices Guidance of the Advisory Committee on Immunization Practices (ACIP)*, THE CENTERS FOR DISEASE CONTROL AND PREVENTION, at *2, https://www.cdc.gov/vaccines/hcp/acip-recs/general-recs/downloads/general-recs.pdf (last visited August 15, 2021).

The ACIP set forth a recommended vaccination schedule that vaccination providers should observe. *Id.* at 12, 28-32. The ACIP also indicated that "persons who administer vaccines should screen patients for contraindications and precautions to the vaccine before each dose of vaccine is administered." *Id.* at 49. Contrary to Plaintiffs' contentions, the ACIP defines "contraindications" as "conditions in a recipient that increases the risk for a serious adverse reaction." *Id.* at 49. Although the ACIP does not recommend vaccination when a contraindication is present, it makes clear that "[b]ecause the majority of contraindications are temporary, vaccinations often can be administered later when the condition leading to a contraindication no longer exists." *Id.* The ACIP also cautions that "certain conditions are commonly misperceived as contraindications (i.e., are not valid reasons to defer vaccination)." *Id.*

The ACIP defines a "precaution" as "a condition in a recipient that might increase the risk for a serious adverse reaction, might cause diagnostic confusion, or might compromise the ability of the vaccine to produce immunity." *Id.* at 50. Further belying Plaintiffs' allegations, an "adverse reaction" is defined as an "undesirable medical condition that has been demonstrated to be caused by a vaccine." *Id.* at 191. The ACIP recommends that once the acute illness has improved, a person should be vaccinated, assuming they have already been screened for contraindications. *Id.* When it comes to children, the ACIP cautions that, "[s]tudies indicate that failure to vaccinate children with minor illnesses can impede vaccination efforts." *Id.* at 51.

The ACIP also points out that physicians and other health care providers "might misperceive certain conditions or circumstances as valid contraindications or precautions to vaccination when they actually do not preclude vaccination" and that "[t]hese misperceptions result in missed opportunities to administer recommended vaccines." *Id.* at 52. The ACIP includes tables of contraindications and precautions to commonly used vaccines (*see id.* at 53-59), as well

11

as conditions that are often incorrectly perceived as contraindications or precautions to vaccinations (*see id.* at 60-61).

The New York State Department of Health's ("DOH") regulatory guidance incorporates the CDC's schedules and guidelines for medical exemptions.[3] The DOH issued a set of procedures for local school districts (such as the NPCSD) to utilize when reviewing requests for medical exemptions.[4] As further explained herein, Plaintiffs' allegations (or lack thereof) are particularly remarkable since the Complaint even fails to allege that the NPCSD was ever provided the opportunity to review or make a determination on any medical exemption request from Plaintiffs. In any event, had the NPCSD reviewed and determined Plaintiffs' medical exemption request, the NPCSD would have merely been abiding by New York State's mandated regulatory procedures.

The DOH explained that the first step in NYS's exemption process is the parent/guardian's submission of a medical exemption statement from the student's physician, which physician must be licensed to practice medicine in the State of New York. *Id.* Second, the principal or other school designee reviews the parent/guardian's submissions for compliance with the New York Public Health Laws. The school may request additional documentation from the parent/guardian. *Id.* "In making a determination on a medical exemption request, the school should seek the appropriate medical consultation (e.g., the school's medical director(s) and/or physicians)." *Id.* at 1. If needed, the school may forward the request to the DOH's Bureau of Immunization for its recommendations. *Id.*

---

[3] *See e.g.*, Statement on Legislation Removing Non-Medical Exemptions from School Vaccination Requirements, NEW YORK STATE DEPARTMENT OF HEALTH, (June 14, 2019) https://www.health.ny.gov/publications/2170/docs/new_legislation_joint_statement.pdf.

[4] *See* Medical Exemption Review Procedures for Schools Outside New York City and for Non-public Schools in New York City, NEW YORK STATE DEPARTMENT OF HEALTH (October 2020), https://www.health.ny.gov/professionals/doctors/conduct/docs/medical_exemption_review_proc edures_for_schools.pdf.

Under NYS's new regulations (which Plaintiffs do not challenge), if a school determines that a student is not exempt from a mandatory vaccine, and that student still refuses to obtain that mandatory vaccine, the school has no choice but to exclude the unvaccinated student from school, as is required by applicable laws. *See* N.Y. Pub. Health Law § 2164(7), 8(a). While a school district may extend the fourteen (14) day grace period and allow a student up to thirty (30) days to comply with NYS's mandatory vaccination requirements, school districts have no authority to extend the deadline beyond 30 days. *See* N.Y. Pub. Health Law § 2164(7) ("the fourteen-day period may be extended to not more than thirty days for an individual student.").

If a local school district, such as the NPCSD, allowed an unvaccinated child, such as I.R., to attend school, such district would be in violation of NYS's Public Health Law § 2164(7). In fact, the DOH's website cautions that "[e]ach student who is permitted to attend school in violation of the requirement of Section 2164(7)(a) constitutes the basis for a separate violation of the Public Health Law for which a civil penalty may be imposed."[5] Moreover, Public Health Law § 12-B(2) sets the civil penalty for a school district's willful violations of Public Health Laws at $2,000 per violation. *Id.* Because unvaccinated and nonexempt children are not eligible to attend public or private schools under NYS law, parents must provide homeschooling instruction for those children, as Perez has done in the instant action. (ECF No. 1 at ¶¶ 34-35); *see also V.D. v. State*, 403 F.Supp.3d 76, 89 (E.D.N.Y. 2019) (recognizing that parents objecting to New York State's mandatory vaccination requirements will thus be required to homeschool their children). While Plaintiffs request that specific portions of NYS PHL § 2164 and 10 NYCRR 66-1.1(f) be struck

---

[5] *See Dear Superintendent/Principal/School Nurse Regarding Public Health Law 2164(7)(a)*, NEW YORK STATE DEPARTMENT OF HEALTH, (last revised August 2019), https://www.health.ny.gov/prevention/immunization/schools/public_health_law_section_2164_l etter.htm.

down, Plaintiffs fail to mention any of the legal consequences that would be imposed on the NPCSD if it failed to comply with NYS's laws.

## ARGUMENT

*Standard of Review:* Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1) provides that an action shall be dismissed if the reviewing Court lacks subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Saleh v. Holder*, 84 F. Supp. 3d 135, 138 (E.D.N.Y. 2014) (internal citations omitted); *see also New York Immigration Coalition v. Rensselaer Cty. Bd. of Elections*, 2019 U.S. Dist. LEXIS 204717, *4-5 (N.D.N.Y. 2019) (J. Hurd). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Saleh*, 84 F. Supp. 3d at 138; *see also Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998). As set forth in NPCSD's motion, Plaintiffs' Complaint must be dismissed based upon the demonstrable absence of subject-matter jurisdiction.

Similarly, FRCP Rule 12(b)(6) provides that a claim shall be dismissed if a Complaint fails "to state a claim upon which relief can be granted." As to NPCSD's instant motion to dismiss under FRCP Rule 12(b)(6), this Court has recently described the applicable standard in *Graham-Johnson v. City of Albany*, 2021 U.S. Dist. LEXIS 79269 (N.D.N.Y. 2021), delineating that:

> To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on

14

its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. 544, 555 [2007]). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 [2d Cir. 2007]). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Id.* at *4-5. Finally, the U.S. Supreme Court in *Ashcroft v. Iqbal* dictated that, *inter alia*, "under [FRCP] 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *See e.g.*, *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Importantly, once the Court wades through Plaintiffs' incredibly prolix Complaint and considers the (extremely limited) factual allegations that are actually applicable and material to the federal claims asserted against the NPCSD, dismissal of the Complaint is clearly warranted as a matter of law. Accordingly, Plaintiffs' Complaint should be dismissed, in all respects, pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and/or 12(b)(6).

## POINT I:   PLAINTIFFS' CLAIMS ARE DEMONSTRABLY NOT RIPE FOR ADJUDICATION

Even prior to analyzing the merits (or lack thereof) of Plaintiffs' claims, the prolix Complaint must be rejected since the "dispute" Plaintiff attempts to assert against the NPCSD is obviously not ripe for review. It is well-established that ripeness is a constitutional prerequisite to exercise the jurisdiction of the federal courts (*Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 [2d Cir. 1998] (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 [1967])), as it invokes the issue of the federal courts' subject matter jurisdiction. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must

address the 12(b)(1) motion first." *See New York Immigration Coalition v. Rensselaer Cty. Bd. of Elections*, 2019 U.S. Dist. LEXIS 204717, *5 (N.D.N.Y. 2019) (J. Hurd) (quoting *Saleh v. Holder*, 84 F. Supp. 3d 135, 138 [E.D.N.Y. 2014]).  Courts can, therefore, determine matters of ripeness *sua sponte* and reject claims on the basis of same.  *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998).

As discussed herein, Plaintiffs' verbose Complaint remarkably fails to allege that Plaintiffs ever: 1) completed the requisite medical exemption application; 2) submitted the required medical exemption application to NPCSD; or 3) that NPCSD ever denied any medical exemption request submitted by or on behalf of Plaintiffs (ECF No. 1 at ¶¶ 18-19, 24).  Rather than engage in any of the mandatory steps with the NPCSD to procure a medical exemption from the two vaccines (which prevent against four different infections/diseases) in question, Plaintiffs merely rely upon their subjective, anticipatory *opinions* that Congress and the New York State Legislature (not the NPCSD) have increased the difficulty of obtaining a medical exemption from the mandatory vaccinations by the State's elimination of the former religious exemption (*see e.g.*, *id.* at ¶¶ 15, 17-19, 24).  Not only do Plaintiffs attempt to have this Court "weigh-in" by creating a Court-imposed medical exemption (as opposed to an exemption provided by NPCSD), but Plaintiffs concede that they are pursuing claims against the NPCSD despite the undisputed fact that NPCSD never denied any of Plaintiffs' medical exemption requests, nor did NPCSD even have the opportunity to do so.

The ripeness doctrine has been established to protect the government (e.g., municipalities) from "judicial interference until a *decision has been formalized* and its effects felt in a *concrete way* by the challenging parties." *Thomas*, 143 F.3d at 34 (quoting *Abbott Labs.*, 387 U.S. at 148-49) (internal citations omitted) (emphasis added).  Moreover, "an Article III court 'cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed

may not occur at all.'" *Thomas*, 143 F.3d at 34 (quoting *Thomas v. Union Carbide Agric. Prods.*

*Co.*, 473 U.S. 568, 580-81 [1985]). As the District Court for the Southern District recently held:

> The ripeness doctrine ensures that a dispute has generated injury significant enough
> to satisfy the case or controversy requirement of Article III of the U.S. Constitution.
> *Dougherty v. Town of N Hempstead Bd of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir.
> 2002). It also prevents courts from entangling themselves in abstract disagreements
> over matters that are premature for review because the injury is merely speculative
> and may never occur, depending on the final administrative resolution. *Id.* The
> ripeness requirement defers federal review of claims until they have arisen in a
> concrete and final form. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342,
> 347 (2d Cir. 2005).

*Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco*, 2019 U.S. Dist. LEXIS 50676

*32 (S.D.N.Y. 2019). In fact, the Circuit Court in *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029

(8th Cir. 2004) specifically declined to exercise jurisdiction over the student-plaintiffs' challenges

to medical exemptions from the state's compulsory school vaccinations on the basis that such

challenges were not ripe for adjudication because the student-plaintiffs' failed to ever request any

exemptions, nor did the school district ever deny such exemptions. *Id.* at 1037. The Circuit Court

in *McCarthy* held that:

> We need not resolve these challenges, however, because any challenges to the
> [vaccination] requirements are not yet ripe. To the extent the Schoolchildren
> challenge the educational component or other aspects of the application process
> under the new [medical] exemption, their claims are speculative and involve no
> concrete injury. No Schoolchildren have applied for nor been denied exemption
> under the new statute. . . . Were we to address the newly enacted exemption statute
> and regulations before first giving the Department of Health the opportunity to
> work with the Schoolchildren, we would inappropriately and prematurely entangle
> the court in an abstract disagreement. [W]e dismiss all pending claims as moot and
> all newly raised challenges as unripe for review. *Id.* (quoting *Abbott Labs.*, 387
> U.S. at 148-49).

Akin to *McCarthy*, the undisputed fact that Plaintiffs never attempted to procure a medical

exemption from NYS's school vaccination requirements is fatal to Plaintiffs' claims against the

NPCSD. *See also Rivendell Winery, LLCv. Town of New Paltz*, 725 F. Supp. 311, 317-19

(N.D.N.Y. 2010) (holding that "mere doubt" as to whether an application will be successful is not sufficient to preemptively bring claims in federal court based upon lack of ripeness); *Ritterband v. Axelrod*, 149 Misc. 2d 135, 139 (1990) (holding that claims are not ripe for review where plaintiffs fail to first attempt to utilize the challenged regulations). Of course, if Plaintiffs elected to submit a medical exemption request to NPCSD, Plaintiffs' exemption request may have been granted, and the instant federal action before this Court may have never been commenced. Avoidance of superfluous lawsuits is exactly what the doctrine of ripeness is designed to facilitate and ensure. *See e.g.*, *Murphy*, 402 F.3d at 347. Analogous to *McCarthy*, this Court should not entertain Plaintiffs' speculative claims which are contingent upon future events that may have never occurred had Plaintiffs availed themselves of NYS's medical exemption procedures. *McCarthy*, 359 F.3d at 1037.

As fully-explained below (*see infra* POINT V), Plaintiffs' failure to submit any medical exemption request or challenge any medical exemption determination by the NPCSD further confirms that NPCSD did not engage in any "state action" which could subject them to *Monell* liability pursuant to 42 U.S.C. § 1983; as opposed to merely abiding by NYS's vaccination laws which were undisputedly drafted, enacted, and enforced by the New York State Legislature. *See e.g.*, *McCluskey v. Imhof*, 2018 U.S. Dist. LEXIS 161998, *9 (E.D.N.Y. 2018). Accordingly, the absence of a ripe controversy compels the dismissal of Plaintiffs' Complaint as a matter of law.

**POINT II:**  **THE COURT LACKS JURISDICTION OVER PLAINTIFFS' SPECIFIC PRAYERS FOR RELIEF**

Plaintiffs' Complaint seeks two forms of equitable relief: positive injunctions and declaratory relief (ECF No. 1 at 114-116)—neither of which are legally viable. As to the claims for injunctive relief, as discussed above (*see supra* POINT I), Plaintiffs' failure to even apply for a medical exemption from the NPCSD, as well as Plaintiffs' failure to challenge any

determinations made by the NPCSD regarding I.R.'s medical exemption, renders their claims unripe for adjudication before this Court. *See e.g.*, *McCarthy*, 359 F.3d at 1037.

As to Plaintiffs' claims for declaratory relief regarding the ingredients of certain vaccines and/or the public policy rationales underlying Congress' passage of the Childhood Vaccine Injury Act ("CVIA"), the Complaint fails to present a case and controversy in the "constitutional sense" as between Plaintiffs and the NPCSD which could legally support declaratory relief under the Declaratory Judgement Act ("DJA") (which is curiously not mentioned anywhere in the prolix Complaint). *See e.g.*, *Textron Lycoming Reciprocating Engine Div. v. United Auto*, 523 U.S. 653, 661 (1998); *see also N. American Airlines, Inc. v. Int'l Bhd. Of Teamsters Local 747*, 2005 U.S. Dist. LEXIS 4385 *24-25 (S.D.N.Y. 2005) (granting union's Rule 12(b) motion to dismiss employer's claims for declaratory relief because they failed to present an Article III "controversy" and the discretion under the DJA would not settle any legal dispute between the parties); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) (underscoring that the "actual controversy" requirement under the DJA is "coextensive with the analysis applicable to the 'case and controversy' standard embodied in Article III."). Plaintiffs' Complaint should be dismissed for these additional jurisdictional defects.

The peculiar types of relief requested by Plaintiffs in this action borders on absurd. For example, Plaintiffs' requests that this Court declare, *inter alia*, that: 1) DTap/Tdap products contain aluminum adjuvants; 2) that pharmaceutical manufacturers possess immunity from "design defects"; 3) that DTap/Tdap products *might* cause death or injuries; and 4) that safety profiles of DTap/Tdap products have not yet been finalized, are clearly not matters that are properly before this Court in an action filed against the NPCSD. Obviously, the NPCSD is not responsible for the ingredients of any particular vaccination or Congress' enactment of the CVIA.

Moreover, contrary to Plaintiffs' contentions, courts have routinely recognized that medical and scientific professionals/agencies are most equipped at determining questions invoking medical and/or scientific concerns. *See e.g.*, *In re Edgewell Personal Care Co. Litig.*, 2018 U.S. Dist. LEXIS 209023, *18-19 (E.D.N.Y. 2018) (holding FDA was best-suited to determine matter of science concerning whether sunscreen products could properly be labeled "SPF 50"); *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 325 (S.D.N.Y. 2012) (holding that the Federal Trade Commission was the proper entity in determining whether certain toothpaste products "deeply whiten and whiten beyond surface stains."). Notably, while Plaintiffs demand the aforementioned extraordinary relief from this Court, Plaintiffs' Complaint is riddled with allegations directing belying their own claims (ECF No. 1 at ¶¶ 127 [stating that the four vaccines in question "may or may not be related to [Plaintiff's] concerns" regarding I.R.'s medical history], 137, 156, 163, 239, 246, 292, 390, 428, 434, 435, 440, 444, 448, 465(h)).[6] This Court therefore lacks jurisdiction to grant the extraordinary injunctive and declaratory relief demanded in the Complaint.

**POINT III:**    **PLAINTIFF-PATRICIA PEREZ LACKS STANDING TO PURSUE CERTAIN CLAIMS ON HER OWN BEHALF**

In addition to the fatal jurisdictional deficiencies described above, Perez's lack of standing precludes this Court from exercising jurisdiction over certain claims that Perez asserts on her own behalf.[7] As the Second Circuit recently noted: "because standing is necessary to [the Court's] jurisdiction, [the Court is] obliged to decide the question [of standing] at the outset." *See e.g.*,

---

[6] *See also Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937, *65-66 (N.D.N.Y. 2021) (J. Sannes) (holding that "[i]n this country there is a long history of disagreements—scientific and otherwise—regarding vaccinations and their risk of harm, and courts have repeatedly found that it is for the legislature, in the light of all the information it had, to choose between opposing theories within medical and scientific communities in determining the most effective way in which to meet and suppress public health threats.") (internal citations omitted).

[7] Because the Complaint does not distinguish which Plaintiff is advancing which sixty-eight (68) causes of action, the NPCSD and the Court are led to presume that these claims are being brought by both Plaintiff and I.R.

*Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016).  To establish standing, a plaintiff must allege a "particularized" injury that "must affect the plaintiff in a personal and individual way."  *See e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992); *New York Immigration Coalition*, 2019 U.S. Dist. LEXIS 204717 at *9 (J. Hurd).  In the instant action, Perez has not, and cannot, show that she has personal and individual standing to pursue claims that involve the right to pursue a free public education, bodily integrity, and substantive due process right to life.  It is undisputed that Ms. Perez is not the individual who needs to be vaccinated in accordance with NYS's compulsory vaccinations in order to attend school, nor is Ms. Perez the person seeking enrollment in the NPCSD.  Accordingly, to the extent that Perez attempts to advance these causes of action on behalf of herself individually, such claims must be dismissed, as a matter of law, predicated upon Perez's clear lack of standing.

**POINT IV:**     **ALL CLAIMS AGAINST FORMER NPCSD HIGH SCHOOL PRINCIPAL MARIO FERNANDEZ MUST BE DISMISSED**

Plaintiffs have named the former NPCSD High School Principal, Mario Fernandez, in his official capacity only (ECF No. 1 at 1).  Remarkably, while the Complaint superfluously advances sixty-eight (68) separate causes of action (*id.* at ¶¶ 130-482), apart from naming Fernandez as a Defendant, the Complaint is completely devoid of *any* allegations describing purported "unlawful" actions that are attributable to Fernandez (*see id.* at ¶ 26).  Because Plaintiffs are seeking prospective declaratory and injunctive relief rather than monetary damages, to maintain the prospective declaratory and injunctive relief sought against Fernandez in his official capacity, Plaintiffs must establish that Fernandez was "responsible for" or had a "direct connection to" the allegedly unlawful activity.  *See e.g.*, *Marshall v. Switzer*, 900 F. Supp. 604, 615 (N.D.N.Y. 1995); *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citing *Loren v. Levy*, 2003 U.S. Dist. LEXIS 4903, *32 [S.D.N.Y. 2003]); *see also Al-Jimdi v. Estate of Nelson Rockefeller*, 885

21

F.2d 1060, 1065 (2d Cir. 1989).  It is well-established that an injunction may issue only "'in circumstances where the state official has the authority to perform the required act.'"  *Loren*, 2003 U.S. Dist. LEXIS 4903 at *32 (quoting *Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 391 [N.D.N.Y. 1998]).  Here, it is unquestionable that Plaintiffs have failed to evince that Fernandez was "responsible for" or had any "direct connection" to the claims Plaintiffs advance regarding NYS's mandatory school vaccinations and medical exemptions concerning same.  In fact, the Complaint completely fails to assert allegations against Fernandez (or any NPCSD official) in any respect whatsoever.  Finally, the fact that Fernandez is no longer employed by the NPCSD—and that no High School Principal has the authority to make or modify School District policy or to undermine/fail to comply with New York State's Public Health Law—further confirms that no relief is available to Plaintiffs against Fernandez.

Notwithstanding the fatal facts articulated above, the Court should dismiss all claims against Fernandez as being duplicative of those asserted against the NPCSD.  It is well-settled in the Second Circuit that "[c]laims against individual defendants in their official capacities 'are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.'"  *See e.g.*, *Rubeor v. Town of Wright*, 191 F.Supp.3d 198, 208 (N.D.N.Y. 2016) (quoting *Zachary v. Clinton Cty.*, 2003 U.S. Dist. LEXIS 26596, at *5 [N.D.N.Y. 2003]); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498–99 (N.D.N.Y. 2017) (holding that "district courts have regularly dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity.").  "The real party in interest in an official-capacity suit is the governmental entity and not the named official."  *See e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) (quoting *Hafer v. Melo*, 112 S. Ct. 358, 361 [1991]).  Specifically, this principal of redundancy applies to public school employees and warrants

dismissal of official-capacity claims against individual parties. *See e.g.*, *Booker v. Board of Education, Baldwinsville Central School District, et al.*, 238 F.Supp.2d 469, 475 (N.D.N.Y. 2002) (dismissing official capacity claims against school officials as "redundant to the claims against the district"); *Barmore v. Aidala*, 419 F. Supp. 2d 193, 202 (N.D.N.Y. 2005) (holding official capacity claims against school board president were "unnecessarily redundant and must be dismissed" because the school district was already named as a defendant in the case). In light of the numerous reasons set forth above, the Court should dismiss all claims asserted against Fernandez.

**POINT V:**   **PLAINTIFFS HAVE FAILED TO ESTABLISH SECTION 1983 *MONELL* LIABILITY AGAINST THE NPCSD**

Plaintiffs' challenges to NYS's Public Health Law § 2164 and 10 NYCRR § 66-1.1, as against the NPCSD, are fundamentally defective due to the demonstrable absence of any "state action" on the part of the NPCSD officials. As revealed throughout Plaintiffs' prolix Complaint, the complete lack of any state action by the NPCSD further exemplifies that Plaintiffs' claims should have been brought—as the allegations in the Complaint even tacitly concede—against the Federal Government and/or the New York State Legislature (*see e.g.*, ECF No. 1 ¶¶ 14, 45, 49, 63-64, 69, 89, 125-129). Critical to this action, while Plaintiffs curiously bring the instant lawsuit against a school district, the Complaint is remarkably bereft of any "state action" that the NPCSD engaged in which directly resulted in an alleged deprivation of Plaintiffs' constitutional rights (*id.*).

As the Supreme Court in *Monell* made clear, "a prerequisite to municipal liability" is for the plaintiff to "show that the challenged acts were performed pursuant to a municipal policy or custom." *See e.g.*, *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 692-94 (1978); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 [1989]). A State statute "***cannot*** be considered a municipal policy for purposes of *Monell*, even if enforced by municipal employees." *Scalpi v. Town of E. Fishkill*,

2016 U.S. Dist. LEXIS 24530, *20-21 (S.D.N.Y. 2016) (emphasis added); *accord Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000). Moreover, long-standing case law dictates that "[t]here can be no municipal liability under *Monell* in the absence of an underlying constitutional violation." *Ameduri v. Vill. of Frankfort*, 2014 U.S. Dist. LEXIS 202569, *2 (N.D.N.Y. 2014) (quoting *Morales v. City of New York*, 752 F.3d 234, 238 [2d Cir. 2014]); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Importantly, Courts in this Circuit have consistently held that "'a municipality **cannot** be liable under *Monell* if it merely carries out a state law without any 'meaningful' or 'conscious' choice, because the municipality does not act pursuant to its own policy in that case.'" *See e.g.*, *McCluskey v. Imhof*, 2018 U.S. Dist. LEXIS 161998, *9 (E.D.N.Y. 2018) (citing *Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 605-606 (S.D.N.Y. 2015)) (emphasis added); *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008); *see also Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) (holding that "[i]t is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law."). In that regard, it is well-settled that, for purposes of § 1983, "a municipality cannot be held liable solely for the acts of others" (e.g., the Federal Government, the New York State Legislature, the various Departments of New York State, and/or private pharmaceutical manufacturers). *See e.g.*, *L.A. County v. Humphries*, 562 U.S. 29, 35 (2010); *Scalpi*, 2016 U.S. Dist. LEXIS 24530 at *20-21. The above authority further compels dismissal of Plaintiffs' claims against the NPCSD, as it is incontrovertible that NPCSD is merely tasked by the NYS Legislature with enforcing NYS's compulsory school vaccinations.

As further delineated below (*see infra* POINT VI), the United States Supreme Court has affirmed the States' authority to implement, allocate, and enforce compulsory vaccination laws for well over one-hundred years now. *See Jacobson v. Massachusetts*, 197 U.S. 11, 37 (1905) ("We are not prepared to hold that a minority . . . enjoying the general protection afforded by an organized local government, may thus defy the will of its constituted authorities, acting in good faith for all, under the legislative sanction of the State."); *see also Zucht v. King*, 260 U.S. 174, 176 (1922); *Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir. 2015); *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *65-66 (J. Sannes). Pursuant to its lawful authority to delegate enforcement, the New York State Legislature has mandated that all school districts must abide by the Public Health Laws by ensuring that all schoolchildren have received the requisite immunizations or appropriate exemptions to same.

Plaintiffs' attempt to hold the NPCSD liable for NYS's compulsory vaccinations requirements is not legally viable. As a threshold matter, it is undisputed that the New York State Legislature—not the NPCSD—drafted and enacted the challenged Public Health Laws and accompanying NYS Regulations (ECF No. 1 at ¶¶ 15, 17-19, 24, 125-129). Plaintiffs cannot rewrite legislative history to manufacture a *Monell* claim against the NPCSD.

Moreover, while it is irrefutable that "it is within a state's police power to establish regulations implementing mandatory vaccine laws and vest local officials [e.g., school districts] with enforcement authority" (*Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *67 (J. Sannes)), the absence of any "state action" in Plaintiffs' case is particularly obvious and exceptional. To that end, Plaintiffs fail to allege that they ever even submitted a medical exemption request to NPCSD, nor do they allege that NPCSD ever reviewed or denied same (ECF No. 1 at ¶¶ 15, 17-19, 24). In any event, it is axiomatic that, even had NPCSD been provided the opportunity to review and make

a determination on Plaintiffs' medical exemption request (which NPCSD was not), the NPCSD would have merely been doing what it was, and is, **required** to do under applicable NYS laws, as opposed to following a policy or custom established directly by the school district. *See* PHL § 2164(7)(a) ("No principal, teacher, owner or person in charge of a school **shall** permit any child to be admitted to such school, or to attend such school, in excess of fourteen days, without the certificate . . . of the child's immunization. . .") (emphasis added); *Phillips*, 775 F.3d at 540 (holding same); *V.D. v. New York*, 403 F. Supp. 3d 76, 86-87 (E.D.N.Y. 2019) ("The case law clearly establishes that conditioning school enrollment on vaccination has long been accepted by the courts as a permissible way for States to inoculate large numbers of young people.") (internal citations omitted). Thus, Plaintiffs' Complaint constitutes nothing more than a request to have this Court direct that the NPCSD violate New York State Laws—a demand which must be summarily rejected by this Court.

**A.** ***The allegations in the Complaint explicitly confirm that Plaintiffs have sued the wrong parties in this action.*** In addition to the above, Plaintiffs' Complaint is saturated with allegations further demonstrating that their challenges to New York State's compulsory vaccination laws should be redirected against either the Federal Government, New York State, and/or the private pharmaceutical companies that manufacture vaccines—but most certainly not against the NPCSD. In fact, the 116-page, 482-allegation Complaint astonishingly lacks *any* reference to § 1983 municipal liability (*see generally* ECF No. 1) and, out of the prolix Complaint's remarkable 482-plus allegations, the only time that NPCSD is even referenced is when it is merely identified as a party-Defendant (*see id.* at ¶ 26). Similarly, out of the protracted Complaint's 482-plus allegations, only ***thirteen (13)*** are factual allegations concerning Perez or I.R. (*see* ECF No.1 ¶¶ 16, 33-42, 127-128). As discussed above, rather than plead any purportedly unlawful "acts" by the NPCSD,

the gravamen of Plaintiffs' Complaint nearly exclusively focuses on the actions and omissions of:
1) Congress; 2) the U.S. Department of Health and Human Services ("USDHH"); 3) the Centers
for Disease Control and Prevention ("CDC"); 4) the U.S. Department of Justice ("USDOJ"); 5)
the Food and Drug Administration ("FDA"); 6) the New York State Legislature and several New
York State agencies; and 7) various private pharmaceutical/vaccine manufacturers (ECF No. 1 at
¶¶ 15, 17-18, 57, 60, 63 n.1, 64, 67, 69-76, 80, 84, 86-89, 93, 100-101, 105-108, 113 115, 116-
119, 122, 129, 359, 389-390, 392, 407, 427, 436, 465, 467, 470).    Accordingly, Plaintiffs'
Complaint is legally infirm as against the NPCSD and clearly cannot survive the instant motion
under FRCP Rule 12(b).

Further remarkable to Plaintiffs' theory is the fact that the Complaint fails to allege that
NPCSD was responsible for I.R.'s inability to lawfully enroll as a student in the upcoming 2021-
22 school year (ECF No. 1 at ¶ 26).    Rather, the Complaint explicitly acknowledges that, *inter
alia*: "*[t]he NYSDOH [not the NPCSD] nonetheless demands that plaintiffs and all other New
Yorkers believe their vaccine claims and submit to such vaccines or else be expelled from school*"
(*id.* at ¶116); "*[t]he NYSDOH [not the NPCSD] seeks to convince parents of its belief in vaccines
. . .*" (*id.* at ¶ 117); "*[w]ith the repeal of the Religious Exemption on June 13, 2019, every parent
who wants to send their child to school in New York must accept the NYSDOH's [not the
NPCSD's] beliefs regarding DTaP/Tdap and IPV*"; (*id.* at ¶ 118).    Thus, Plaintiffs explicitly
concede by the numerous allegations contained in their Complaint that the challenged claims do
***not*** involve a policy or custom (or even any state action) of the NPCSD.[8]    Accordingly, Plaintiffs'
implied *Monell* claim against the NPCSD fails in all respects as a matter of law.

---

[8] Plaintiffs go so far as to admit that "the issues presented in this complaint turn on proof and
evidence, not on the often repeated but never supported claim that DTaP/Tdap vaccines are "safe

**POINT VI:**  **PLAINTIFFS' SIXTY-EIGHT (68) CAUSES OF ACTION AGAINST THE NPCSD ARE MERITLESS AND FAIL TO STATE A CLAIM PURSUANT TO FRCP RULE 12(b)(6)**

Even assuming *arguendo* that all of the arguments set forth above were not fatal to Plaintiffs' Complaint (which they are), long-standing case law makes clear that Plaintiffs cannot state plausible causes of action against the NPCSD for: 1) Substantive Due Process Right to Life and Liberty; 2) Right to Pursue an Education; 3) Free Exercise of Religion; 4) Informed Consent; 5) Parental Choice; and 6) Bodily Integrity.[9]  These "anti-vaccination" claims that Plaintiffs attempt to reiterate before this Court are nothing new and, in fact, these precise types of claims have unsuccessfully challenged states' vaccination laws for over one-hundred years now.  As fully-demonstrated below, Plaintiffs' claims have been repeatedly and consistently rejected by the U.S. Supreme Court, Second Circuit, other District Courts within this Circuit and, most recently, again by this Court. *See Jacobson*, 197 U.S. at 37; *Zucht*, 260 U.S. at 176; *Phillips*, 775 F.3d at 542; *V.D.*, 403 F. Supp. 3d at 86-87; *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *67 (J. Sannes).

Preliminarily, Plaintiffs' regurgitate the long-rejected argument throughout their Complaint that the claims they attempt to allege against the NPCSD should be afforded strict scrutiny (ECF No. 1 at ¶¶ 137, 219, 454, 456).  However, identical to this Court's very recent decision in *Doe v. Zucker*, the genesis of Plaintiffs' claims stem from I.R.'s right to enroll in public school—a right that is not fundamental and undisputedly triggers only a rational basis review. *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *63 (J. Sannes); *Plyler v. Doe*, 457 U.S. 202, 223 (1982).  As this Court in *Doe v. Zucker* recently held with respect to the plaintiffs' challenges to

---

and effective" and that the "science is settled.'"  (ECF No. 1 at ¶ 470).  Clearly, these types of scientific/medical issues are not proper issues to advance against the NPCSD.

[9] Plaintiffs curiously advance a number of "cumulative" causes of action (i.e., causes of action #8, #15, #23, #32, #39, #46, #51, and #57) which are identical to Plaintiffs' other enumerated claims and will therefore be addressed by the same analysis herein.

PHL § 2164 and 10 NYCRR 66-1 involving, *inter alia*, claims of substantive due process, right to

education, bodily integrity, informed consent, and parental choice:

> Thus, after considering a careful description of the rights Plaintiffs assert, the Court
> finds that Plaintiffs have failed to allege the infringement of fundamental rights that
> would trigger strict scrutiny.  Accordingly, rational basis review applies, and the
> Court must determine whether the governmental regulation is reasonably related to
> a legitimate state objective.  *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461
> (2d Cir. 1996) (citing *Reno v. Flores*, 507 U.S. 292, 303-06 [1993]); *see also
> Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) ("The law in this Circuit
> is clear that where, as here, a statute neither interferes with a fundamental right nor
> singles out a suspect classification, we will invalidate that statute on substantive
> due process grounds only when a plaintiff can demonstrate that there is no rational
> relationship between the legislation and a legitimate legislative purpose.")

*Id.* at 71-71.  Despite Plaintiffs' efforts to bolster their claims by asserting a remarkable sixty-eight

(68) causes of action (which are overwhelmingly duplicative) against the NPCSD, after wading

through the (extremely limited) material allegations in the prolix Complaint, it becomes apparent

that Plaintiffs' Complaint merely presents yet another unpersuasive attempt to invent "fundamental

rights" from an issue (i.e., the right to pursue a free public education) that is well-settled to only

invoke rational basis review (*see id.*).  Accordingly, applicable law makes clear that Plaintiffs have

failed to state a claim against the NPCSD.

**A.**     ***Plaintiffs' substantive due process claims[10] fail as a matter of law.***  Over one-hundred

years ago, the U.S. Supreme Court in *Jacobson v. Commonwealth of Massachusetts* ruled that a

state's compulsory vaccination requirements did not violate a plaintiff's substantive due process

rights. *Jacobson*, 197 U.S. at 25-26.  *Jacobson* "rejected the claim that the individual liberty

guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in

the interest of the population as a whole." *Phillips*, 775 F.3d at 542 ("Plaintiffs argue that New

---

[10] Plaintiffs' substantive due process claims comprise their 4th-5th, 12th-13th, 19th-20th, 27th-
28th, 35th-36th, 43rd, 47th, 52nd, 61st-62nd, and 67th-68th causes of action (ECF No. 1).

York's mandatory vaccination requirement violates substantive due process.  This argument is foreclosed by the Supreme Court's decision in *Jacobson*.").  *Jacobson* and its standard of review (i.e., rational basis) regarding states' vaccination requirements remains the law today.

In 1922, seventeen years after *Jacobson*, the U.S. Supreme Court again relied on its holding in *Jacobson* in rejecting another challenge to mandatory vaccination requirements for public school students. See *Zucht*, 260 U.S. at 176.  In *Zucht*, the Supreme Court reiterated that "a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative."  *Id.* (citing *Laurel Hill Cemetery v. San Francisco*, 216 U.S. 358, 366 [1910]).  The Supreme Court further held "the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law."  *Zucht*, 260 U.S. at 176 (citing *Liberman v. Van de Carr*, 199 U.S. 552, 561-62 [1905]).

In 2015, New York State's police powers to enact compulsory vaccination laws were further reiterated by the Second Circuit in *Phillips v. City of New York*, with specific regard to New York State Public Health Law § 2164 and the accompanying regulations found in 10 N.Y.C.R.R. § 66-1.  *See Phillips*, 775 F.3d at 542.  Rejecting another claim of substantive due process, the Second Circuit in *Phillips* held that "[p]laintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than *Jacobson's* was more than a century ago."  *Id.*; *see also Caviezel v. Great Neck Pub. Sch.*, 500 F. App'x 16, 19 (2d Cir. 2012) (holding same).  The Second Circuit went on to underscore that "no court appears *ever* to have held" that *Jacobson* warrants strict scrutiny.  *Phillips*, 775 F.3d at 542-43 n.5 (emphasis added).

Just this year, this Court in *Doe v. Zucker* found that "[i]t is well-settled, as Plaintiffs acknowledge, that New York's mandatory vaccination law does not violate substantive due

process." *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *72-73 (J. Sannes) (citing *Phillips*, 775 F.3d at 542). Rather, only "the most egregious official conduct" can be construed to violate the principles of substantive due process" (*County of Sacramento v. Lewis*, 523 U.S. 833, 846 [1998]), and "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). Finally, just a few days ago, the U.S. Supreme Court in *Klaassen* reiterated the application of rational basis with respect to states' vaccination laws in accordance with the holding in *Jacobson. See Klaassen, et al.*, Dkt. No. 21-2326, Appl. No. 21A15 (Aug. 12, 2021) (Justice Barrett). Akin to the instant matter, Plaintiffs have not, and cannot, satisfy this exacting standard.

Here, Plaintiffs challenge limited provisions of NYS's Public Health Law, which the NPCSD merely followed as it was (and is) required to do. As discussed above, not only is it undisputed that the New York State Legislature drafted and enacted the compulsory vaccination requirements (not the NPCSD), but Plaintiffs fail to allege that they ever submitted a medical exemption request or that NPCSD ever reviewed or denied same. Importantly, even in cases where the school district *did* evaluate and ultimately deny a plaintiff's medical exemption application, this Court (and others) have repeatedly dismissed underlying substantive due process claims on the grounds that the school districts were merely following applicable State laws. *See e.g., Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *83 (J. Sannes). Plaintiffs' substantive due process claims should therefore be dismissed since NPCSD's mere observance of NYS's Public Health Laws clearly does not constitute the most "severe" and "egregious" conduct that would result in any constitutional deprivation.

31

Although it is evident that Plaintiffs' challenges to PHL § 2164 and 10 N.Y.C.R.R. § 66-1 should have been directed against New York State (not the NPCSD or its former principal), it is notable that Plaintiffs' interpretation as to the application of the underlying laws is erroneous. Plaintiffs argue that PHL § 2164(8) (i.e., the medical exemption, which Plaintiffs do not expressly challenge) has been "gutted" by the NYSDOH and limited "to only permitting a medical exemption if it is based on the CDC's strict contraindication list.  And the only basis, under the CDC's contraindication list for not receiving a DTaP/Tdap or IPV vaccine, is if the child has already had anaphylaxis (life threatening allergic reaction) or encephalopathy (brain damage) from a prior dose of DTaP/Tdap or IPV."  (ECF No. 1 at ¶ 118).  This is an inaccurate construction of NYS's vaccination laws, as the regulations explicitly provide for medical exemptions where it can be demonstrated that there is "a medical contraindication or precaution to a specific immunization consistent with ACIP guidance *or other nationally recognized evidence-based standard of care*." *See* 10 N.Y.C.R.R. § 66-1.1(l) (emphasis added); *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *120.  Of course, Plaintiffs have not, and cannot, challenge whether the NPCSD correctly applied NYS's immunization laws since Plaintiffs did not bother to even submit a medical exemption request for NPCSD's (including NPCSD's medical providers') review.  Rather, Plaintiffs elected to bypass engagement with the NPCSD and instead commenced this federal action with the Court.

Lastly, with respect to the applicable test triggered by Plaintiffs' claims (rational basis), it is unquestionable that NYS's compulsory vaccination laws have a "rational connection" to the State's legitimate interests in promoting and protecting the public's health, safety, and welfare. *See id.* (citing *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) [holding that "we are required to uphold the legislative decision if there is any reasonably conceivable state of

facts that could provide a rational basis for the decision.") (internal citations omitted). It light of

the foregoing, it is clear that Plaintiffs' substantive due process claims must fail as a matter of law.

**B.**      ***Plaintiffs' right to education claims[11] fail as a matter of law.***  As discussed above, the

gravamen of Plaintiff's prolix Complaint (i.e., the right to pursue a public education) must be

rejected by this Court.  Just a few months ago, this Court in *Doe v. Zucker* dismissed these same

types of challenges to NYS's mandatory vaccination requirements, reemphasizing that "[i]t is well-

established that there is no fundamental right to education, and thus the deprivation of a 'right to

pursue an education,' by itself, does not trigger strict scrutiny.  *Doe v. Zucker*, 2021 U.S. Dist.

LEXIS 28937 at *63 (J. Sannes) (citing *Plyler*, 457 U.S. at 223); *see also Phillips*, 775 F.3d at 542

n.5 (holding that "there is no substantive due process right to public education").  As fully-

explained herein, rational basis is the appropriate standard of review for all of Plaintiffs' claims

since the consequence of not complying with NYS's compulsory vaccination requirements (apart

from the health risks associated with being unvaccinated) is the inability to lawfully attend school.

*Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *62.

The Eastern District Court in *V.D.* recently reiterated that NYS's compelling interests in

vaccination laws are superior to a student's right to a free public education.  *V.D.*, 403 F. Supp. 3d

at 87 ("A state's compulsory immunization law is a proper exercise of police power, and such

legislation is supported by a state's strong interests in protecting the public health and welfare.").

In *V.D.*, the plaintiff-parents challenged NYS Public Health Law § 2164's requirements by

claiming the statute violated their children's right to an education and related services pursuant to

the Individuals with Disabilities Education Act ("IDEA").  *Id.* at 80, 83-84.  Following the State's

---

[11] Plaintiffs' right to education claims are encompassed in the 7th, 14th, 22nd, 30th, 38th, and 45th
causes of action (ECF No. 1).

elimination of the religious exemption, the plaintiffs challenged the statute's validity. *See id.* The court in *V.D.* rejected plaintiffs' challenge to the right to an education, and cited the Second Circuit's 2015 decision in *Phillips*, which upheld the constitutionality of New York State's vaccination laws mandating vaccinations as a legitimate condition for school attendance. *Id.* at 86 (citing *Phillips*, 775 F.3d at 543) ("New York could constitutionally require that all children be vaccinated in order to attend public school."). This Court should follow its recent decision in *Doe v. Zucker* and likewise dismiss Plaintiffs' claims involving the right to pursue an education.

Contrary to Plaintiffs' contentions, because there is no fundamental right to pursue a free public education, such claims are afforded rational basis review. *San Antonio Indep. Sch. Dist. v. Rodrignez*, 411 U.S. 1, *58-59 (1973) (holding the U.S. Constitution neither explicitly nor implicitly guarantees the right to an education); *New York State Asso. for Retarded Children, Inc. v. Rockefeller*, 357 F. Supp. 752,762 (E.D.N.Y. 1973) (holding the alleged denial of a public education does not infringe upon any fundamental right). The condition that schoolchildren comply with NYS's vaccination laws irrefutably has a "rational connection" to the State's legitimate interests in promoting schoolchildren's, the schoolchildren's families, and all school district employees' health and safety from contagious and potentially fatal infections and diseases. Moreover, the medical exemption regulations do not directly force parents to consent to vaccinating their children; the regulations merely condition school enrollment upon the observance of the laws. *See Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *65 (J. Sannes). As Perez acknowledges, she is free to elect to homeschool I.R., which Perez is currently doing and has done in the past even prior to NYS's abolishment of the religious exemption (ECF No. 1 at ¶¶ 34-35). As such, because NYS's vaccination laws clearly satisfy rational basis review, Plaintiffs' claims regarding the right to pursue an education must be dismissed as a matter of law.

**C.**      ***Plaintiffs' free exercise of religion claims[12] fail as a matter of law.***   Plaintiffs' free exercise of religion claims are demonstrably frivolous.   Notably, Plaintiffs admit to improperly using NYS PHL's former religious exemption to circumvent the requirements of the State's vaccination laws (ECF No. 1 at ¶¶ 18-19, 118, 125, 128).   Identifying the statute's former religious exemption as the "release valve" that Plaintiffs' previously employed to make up for what they characterize as being an alleged "gap in scientific knowledge with regards to GSK and Sanofi's DTaP/Tdap and IPV products," the Complaint acknowledges that "Plaintiff, as a parent, therefore claimed a religious exemption from further vaccination . . ." (*id.* at ¶¶ 18, 127-128).   This apparent misuse of the former religious exemption is arguably a violation of the State's PHL's and further illustrates the justification for the NYS Legislature's June 2019 repeal of same in the wake of the United States' and, particularly, New York's "worst outbreak of measles since 1994"; due, in part, to documented misuse of the former religious exemption.   *See* N.Y. Assy. Bill No. 2371, Legis. S. 247 (May 22, 2019); *V.D.*, 403 F. Supp. at *80-81.   In any event, even had NYS's former religious exemption not been legitimately abolished, germane law plainly forecloses Plaintiffs' attempted free exercise of religion claims against the NPCSD.

As an initial matter, Plaintiffs' have failed to allege any sincerely-held religious belief. Plaintiffs' neither identity any particular religion that they practice, what their unidentified religion requires, nor why their unidentified religion would prohibit the four required vaccines Plaintiffs' challenge (yet not the other "boosters" of the same vaccinations that I.R. apparently voluntarily obtained).   Even prior to the NYS Legislature's lawful repeal of the PHL's religious exemption, the Second Circuit summarily rejected such types of opaque "free exercise" claims.   *Mason v.*

---

[12] Plaintiffs' free exercise of religion claims are found in Plaintiffs' 13th, 21st, 29th, 37th, 44th, 56th, and 63rd causes of action (ECF No. 1).

*General Brown Cent. School Dist.*, 851 F.2d 47, 52 (2d Cir. 1988) ("Everyone makes basic choices about where to live, what to eat, and how to raise children. Merely because these decisions are important, and may be supported by strong conviction, does not render them religious."); *see also Watkins-El v. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 139860, *8 (E.D.N.Y. 2016) ("Although Plaintiff asserts that his religion is 'Islamism' and that he is a Moor, he does not claim that the tenets of Islamism or Moorish culture prohibit vaccinations. . . Plaintiff's opposition to these substances may be genuine and sincere, but he has not demonstrated that it stems from a religious, rather than simply moral, belief."). Further, Plaintiffs' have particularly failed to establish what "religion" they observe that permits I.R. to be "administered all vaccines required under New York law to attend school with the exception of one dose of a tetanus, diphtheria and pertussis containing vaccine and one dose of a polio vaccine" (ECF No. 1 at ¶ 1), but not the exact same four vaccines that Plaintiffs currently challenge.

The Second Circuit has made clear that NYS PHL § 2164's former religious exemption went "***beyond*** what the Constitution require[d] by allowing an exemption for parents with genuine and sincere religious beliefs." *Phillips*, 775 F.3d at 543 (emphasis in original). Echoing the Second Circuit's decision in *Phillips*, the Southern District of California held in 2016 that states were not required to provide exemptions to compulsory vaccination laws for parents who object to the law's requirements on religious grounds. *Whitlow v. California*, 203 F. Supp. 3d 1079, 1086 (S.D. Ca. 2016) (citing *Phillips*, 775 F.3d at 543); *V.D.*, 403 F. Supp. at *86-87; *see also Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 354 (4th Cir. 2011) (affirming district court's holding that, "although a state may provide a religious exemption to mandatory vaccination, it need not do so."). As such, under any circumstances, Plaintiffs' free exercise claims must fail as a matter of law.

Most importantly, even had Plaintiffs' plead a sincerely-held religious belief (which they have not), "[t]he Second Circuit has explicitly held that the immunization requirements of Public Health Law § 2164 violate neither the Free Exercise Clause of the First Amendment nor the Due Process clause of the Fourteenth Amendment." *Watkins-El*, 2016 U.S. Dist. LEXIS 139860 at *7 (citing *Phillips*, 775 F.3d at 543, *aff'd* 27 F. Supp. 3d 310 [E.D.N.Y. 2014]).  The U.S. Supreme Court has long ago rejected Plaintiffs' free exercise challenge, holding that "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944). Contrary to Plaintiffs' allegations, courts have repeatedly held that the NYS Legislature's June 2019 repeal of the religious exemption is not a violation of the First Amendment or Equal Protection rights and, moreover, is rationally related to achieving the State's legitimate interests in promoting the public's health and safety.  *F.F. v State of New York*, 66 Misc. 3d 467, 467 (Sup. Ct. 2019) (holding NYS "did not violate Equal Protection by leaving in a medical exemption while removing the religious exemption . . . Vaccination was not expressive conduct under the First Amendment."), *aff'd F.F. v. N.Y.*, 194 A.D.3d 80, 84 (3d Dep't 2021).  Thus, this Court should reject Plaintiffs' frivolous free exercise claims.

**D.** **Plaintiffs' parental choice, informed consent, and bodily integrity claims[13] all fail as a matter of law.** The Second Circuit has held that, when a parental right is invoked against a state regulation, "'rational basis review is appropriate'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996); *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *64.  As this Court recently held, "[t]he medical exemption regulations, however, do not directly infringe on any such

---

[13] Plaintiffs' informed consent and bodily integrity claims are alleged in the 1st-3rd, 9th-11th, 16th-18th, 24th-26th, 32nd-34th, 40th-42nd, 48th-50th, 53rd-55th, 58th-60th, and 64th-66th causes of action (ECF No. 1).

[fundamental] right because they do not force parents to consent to vaccination of their children."

*Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at \*64. This fact is further demonstrated by Plaintiffs' acknowledged election to homeschool I.R. in lieu of observing NYS's school vaccination requirements (ECF No. 1 at ¶¶ 34-35). As indicated above, the consequences of not complying with NYS's school vaccination laws results only in an inability to lawfully attend school, which Plaintiffs acknowledge is not a fundamental right (*see e.g.*, *id.* at ¶ 169). For the reasons set forth below, Plaintiffs' claims cannot stand even as against the NYS Legislature (whom Plaintiffs curiously chose not to sue) and, most certainly, not as against the NPCSD officials.

Plaintiffs' claims concerning parental choice, informed consent, and bodily integrity have also recently been rejected by this Court. Relying on the United States Supreme Court's decision in *Jacobson*, this Court in *Doe v. Zucker* reemphasized the long-standing principle that:

> The Court does not find a basis for Plaintiffs' asserted fundamental right. In this country there is a long history of disagreements—scientific and otherwise— regarding vaccinations and their risk of harm, and courts have repeatedly found that it is for the legislature, in the light of all the information it had, to choose between opposing theories within medical and scientific communities in determining the most effective way in which to meet and suppress public health threats. *Jacobson*, 197 U.S. at 30-31.

*Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at \*65-66 (internal citations omitted); *see also Phillips*, 775 F.3d at 542-43 (noting that the "[p]laintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors."). *Jacobson* specifically foreclosed bodily integrity claims stemming from a state's vaccination laws. *Jacobson*, 197 U.S. at 30 (rejecting theories of people "who think that vaccination causes other diseases of the body" in favor of the mainstream "high medical authority" possessed by the states' officials). It therefore follows that, in light of the substantial deference that has long been provided

to state governmental officials, Plaintiffs' claims regarding parental choice cannot overcome the compelling interests of NYS in promoting immunity and protection of the public against serious infections and/or potentially fatal diseases. *See e.g.*, *Doe v. Zucker*, 2021 U.S. Dist. LEXIS 28937 at *81 ("[I]t is beyond question that state agencies like DOH may vest local officials with the authority to use appropriate discretion in enforcing these regulations.").

While it is true that parents have general rights in the upbringing of their children, it is well-settled that these rights are not absolute and may be conditioned and regulated when important state interests are implicated—such as with mandatory state vaccinations. This principal was revisited in 1944 by the U.S. Supreme Court in *Prince v. Massachusetts*, where it was held that "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare"—compulsory school vaccinations were found to be one of those absolute powers of the state. *Prince*, 321 U.S. at 166 (citing *Jacobson*, 197 U.S. at 37). Applying such precedent to the instant action, Plaintiffs have not, and cannot, allege that the State's interests in enacting and enforcing mandatory school vaccination laws is anything short of compelling (ECF No. 1 at ¶¶ 135, 143, 148, 153, 159, 165, 170, 184, 217, 226, 231, 236, 242 [where Plaintiffs concede such compelling State interests exist]). Thus, Plaintiffs' claims regarding parental choice must clearly be dismissed.

Likewise, the long-standing notion that the NYS Legislature is best-equipped to determine matters relating to the State's compulsory vaccination laws similarly applies to Plaintiffs' informed consent claims. Here, Plaintiffs' prolix Complaint—which reads more like a medical journal containing a (subjective) in-depth analysis and history, including various charts, of the two challenged vaccines (which protect against four different infections/diseases)—shows that there is no dispute that Plaintiffs have been fully-informed about NYS's vaccinations and have consulted

with their own medical providers and chosen medical literature regarding same (*see e.g.*, ECF No. 1 at ¶¶ 31, 47-48, 53, 55).  New York Public Health Law § 2805-d(1) defines a lack of informed consent as follows:

> Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

*Id.*

Accordingly, there is clearly no legally viable basis to Plaintiffs' claims involving parental informed consent against the NPCSD.  In fact, the superfluously verbose medical and scientific allegations contained in Plaintiffs' Complaint confirm the opposite of any lack of informed consent (*see also* ECF No. 1 at ¶ 28).  Thus, in light of all the foregoing arguments, Plaintiffs' Complaint against the NPCSD and its former principal must be dismissed, in all respects, as a matter of law.

## CONCLUSION

WHEREFORE, it is respectfully requested that this Court: 1) grant New Paltz Central School District's Motion to Dismiss, pursuant to FRCP Rules 12(b)(1) and/or 12(b)(6), in its entirety; 2) dismiss Plaintiffs' June 15, 2021 Complaint (ECF No. 1); and 3) grant such other and further relief in New Paltz Central School District's favor as this Court deems just and appropriate.

Dated: August 16, 2021

Respectfully submitted,

JOHNSON & LAWS, LLC

Loraine C. Jelinek (700354)
Gregg T. Johnson (506443)
