IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA S. PEREZ, individually and on behalf of her minor child I.R.,<br><br>*Plaintiff*,<br><br>v.<br><br>NEW PALTZ CENTRAL SCHOOL DISTRICT and DR. MARIO FERNANDEZ, in his official capacity as the principal of the New Paltz High School,<br><br>*Defendants*. | Case No. 1:21-cv-00706-DNH-CFH |

**BRIEF, IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS, OF *AMICI CURIAE* AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, CENTRAL CONFERENCE OF AMERICAN RABBIS, DISCIPLES CENTER FOR PUBLIC WITNESS, DISCIPLES JUSTICE ACTION NETWORK, EQUAL PARTNERS IN FAITH, MEN OF REFORM JUDAISM, MUSLIM ADVOCATES, NATIONAL COUNCIL OF JEWISH WOMEN, RECONSTRUCTIONIST RABBINICAL ASSOCIATION, UNION FOR REFORM JUDAISM, AND WOMEN OF REFORM JUDAISM**

## TABLE OF CONTENTS

**Page(s)**

Interests of *Amici Curiae* ...................................................................................................1

Introduction and Summary of Argument............................................................................1

Argument .............................................................................................................................3

I.  The courts have long rejected religion-based requests for exemptions from vaccination requirements ........................................................................................3

II. The vaccination statute's medical exemption does not render New York's removal of the religious exemption unconstitutional ............................................7

    A.  The medical exemption does not trigger strict scrutiny...................................7

    B.  Even if the medical exemption triggered strict scrutiny, New York's vaccination statute would pass muster.........................................................12

Conclusion ........................................................................................................................15

**INTERESTS OF *AMICI CURIAE***

*Amici* are religious and civil-rights organizations that share a commitment to preserving the constitutional principles of religious freedom and the separation of religion and government. They believe that the right to exercise religion freely is precious, but that it was never intended to override protections for people's safety and health. *Amici* therefore oppose Plaintiff's attempt to use the First Amendment's Free Exercise Clause to mandate a religious exemption from New York's vaccination requirements for school attendance.

The *amici* are:

- Americans United for Separation of Church and State.

- Central Conference of American Rabbis.

- Disciples Center for Public Witness.

- Disciples Justice Action Network.

- Equal Partners in Faith.

- Men of Reform Judaism.

- Muslim Advocates.

- National Council of Jewish Women.

- Reconstructionist Rabbinical Association.

- Union for Reform Judaism.

- Women of Reform Judaism.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Vaccination of children—"one of the most significant public health interventions of all time"—safeguards individual children's health and protects the community against the spread of infectious disease. *E.g.*, Eileen Wang et al., *Nonmedical Exemptions from School Immunization Requirements: A Systematic Review*, 104 AM. J. PUB. HEALTH e62, e62 (2014),

1

https://bit.ly/3z06FQE. Childhood vaccinations have prevented more than one hundred million cases of severe disease since 1924. *See* Lawrence O. Gostin, *Law, Ethics, and Public Health in the Vaccination Debates*, JAMA Online, at E1 (Feb. 12, 2015), https://bit.ly/3CiOXcL. Accordingly, all fifty states impose vaccination requirements on children attending schools. *Id.*

But in recent years, anti-vaccination sentiment has led to resurgences of dangerous diseases such as measles, mumps, and pertussis. *E.g.*, Olivia Benecke & Sarah E. DeYoung, *Anti-Vaccine Decision-Making and Measles Resurgence in the United States*, 6 GLOB. PEDIATRIC HEALTH 1, 1 (2019), https://bit.ly/3pilaup. Thus, after vaccination rates in many New York schools fell below the threshold needed to prevent spread of a variety of diseases, and outbreaks of illness followed, the New York legislature enacted a law eliminating the religious exemption to the state's school-vaccination statute. *See F.F. ex rel. Y.F. v. State*, 114 N.Y.S.3d 852, 863–64 (N.Y. Sup. Ct. 2019), *aff'd*, 143 N.Y.S.3d 734 (N.Y. App. Div. 2021), *petition for review filed*, No. 21-82 (N.Y. 2021).

Among her claims, Plaintiff contends that the Free Exercise Clause entitles her to a religious exemption from the vaccination statute's requirement that her child—if she is to attend school—be vaccinated against diphtheria, tetanus, pertussis, and polio. That is not so.

The Supreme Court and lower courts have long upheld vaccination requirements in the face of constitutional challenges, including arguments based on the freedom of religion. And under Supreme Court precedent, neutral, generally applicable laws enacted without discriminatory intent toward religion do not violate the Free Exercise Clause. New York's amended vaccination statute complies with this standard because it applies to all students who can be vaccinated safely.

The amended statute is not rendered unconstitutional by its continued allowance of a medical exemption from vaccination requirements. Nonreligious exemptions to a law do not

2

require a religious exemption when the nonreligious exemptions advance the governmental interests served by the law, or at least do not undermine those interests as much as a religious exemption would. Here, far from undermining the governmental interest underlying the statute—protecting people's health—the medical exemption supports it. A religious exemption would not.

The Court should grant Defendants' motion to dismiss.

## ARGUMENT

I. **The courts have long rejected religion-based requests for exemptions from vaccination requirements.**

Religious freedom is a value of the highest order. But as the Supreme Court recently reaffirmed, the constitutional guarantee of religious freedom does not confer on religious objectors "a general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). The Supreme Court and lower courts thus have repeatedly rejected religion-based challenges to vaccination requirements.

More than a century ago, in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905), the Court upheld a mandatory-vaccination law aimed at stopping the spread of smallpox. The Court "[did] not perceive that this legislation ha[d] invaded *any* right secured by the Federal Constitution." *Id.* at 38 (emphasis added). And the Court explained that "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own [liberty] . . . regardless of the injury that may be done to others." *Id.* at 26. The Court thus straightforwardly rejected the view that the Constitution bars compulsory measures to protect the public health, recognizing instead the "fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens in order to secure the . . . health . . . of the state.'" *Id.* (quoting *Hannibal & St. Joseph R.R. Co. v. Husen*, 95 U.S. 465, 471 (1877)). For "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27.

Likewise, in *Zucht v. King*, 260 U.S. 174, 175 (1922), the Court rejected a Fourteenth Amendment challenge to a San Antonio ordinance prohibiting children from attending public or private schools without proof of vaccination. The Court explained that "[l]ong before this suit was instituted" *Jacobson* had upheld the state's power to require vaccinations. *Id.* at 176. The Court therefore concluded that "the constitutional question presented . . . was not . . . substantial in character." *Id.*

Although *Jacobson* and *Zucht* did not specifically consider a Free Exercise Clause argument, perhaps because the Clause had not yet been held applicable to the States, several of the Court's subsequent decisions have recognized that the principles set forth in those two cases apply in the free-exercise context as in all others. In *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944), for example, the Court explained that one "cannot claim freedom from compulsory vaccination . . . on religious grounds." For the "right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Id.* at 166–67.

In *Sherbert v. Verner*, 374 U.S. 398, 402–03 (1963), the Court, citing *Jacobson* and *Prince*, noted that it "has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles" when "[t]he conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order." In *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972), the Court underscored that free-exercise claims are denied when "harm to the physical or mental health . . . or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred." In explaining that foundational principle, the Court specifically pointed (*id.* at 230 & n.20) not just to *Jacobson* but also to a case expressly rejecting a free-exercise challenge to a mandatory-vaccination law, *Wright v. DeWitt Sch. Dist. No. 1*, 385 S.W.2d 644 (Ark. 1965). And in *Employment Division v. Smith*, the Court reaffirmed that the Free Exercise Clause does not

4

"require[] religious exemptions from . . . health and safety regulation such as . . . compulsory vaccination laws." 494 U.S. 872, 888–89 (1990) (citing *Cude v. State*, 377 S.W.2d 816 (Ark. 1964)).

*Smith* also altered the legal standard for free-exercise claims in a manner that hampers religion-based challenges to vaccination mandates such as New York's even more. In pre-*Smith* cases, such as *Sherbert*, 374 U.S. at 403–09, and *Yoder*, 406 U.S. at 215–19, the Supreme Court had been of the view that a law that substantially burdens religious exercise must serve a compelling governmental interest through narrowly tailored means. But *Smith* changed the legal landscape by holding that laws do not violate the Free Exercise Clause when they are neutral toward religion and apply generally, even if they substantially burden religion. *See* 494 U.S. at 878–79. As Justice Scalia explained for the Court, to "h[o]ld that an individual's religious beliefs excuse him from compliance with an otherwise valid law" would make "'professed doctrines of religious belief superior to the law of the land, and in effect . . . permit every citizen to become a law unto himself.'" *Id.* (quoting *Reynolds v. United States*, 98 U.S. 145, 166–67 (1879)).

Following both *Smith* and the Supreme Court's pre-*Smith* precedents, the Second Circuit and many other courts have ruled that the Free Exercise Clause does not require religious exemptions from vaccination requirements. In *Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015), the Second Circuit held that a school district did not violate the Free Exercise Clause by temporarily excluding from school, as a result of a chicken-pox outbreak, children who had religious exemptions from New York State's vaccine requirements. The court explained that "New York could constitutionally require that all children be vaccinated in order to attend public school," and that the state had "go[ne] beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs." *Id.* at 543. Likewise, in *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017), rejecting a free-exercise challenge to

5

Michigan's procedures for obtaining a religious exemption from vaccination requirements for schoolchildren, the Sixth Circuit observed that "[c]onstitutionally, [the plaintiff] has no right to an exemption." Similarly, in *Workman v. Mingo County Board of Education*, 419 F. App'x 348, 353 (4th Cir. 2011), the Fourth Circuit denied a free-exercise challenge to West Virginia's vaccination requirements for school attendance, noting that "the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest." And in *F.F.*, 143 N.Y.S.3d at 741–42, a New York appellate court held that New York's repeal of the religious exemption to its vaccination statute did not violate the Free Exercise Clause. Numerous federal district courts and other state courts have resolved free-exercise claims in vaccination cases the same way.[1]

Application of *Smith*'s rule that neutral, generally applicable laws do not violate the Free Exercise Clause confirms that there is no basis to deviate from these precedents with respect to

---

[1] *See, e.g., Klaassen v. Trustees of Ind. Univ.*, __ F. Supp. 3d __, No. 1:21-cv-238, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021), *motion for injunction pending appeal denied*, __ F.4th __, No. 21-2326, 2021 WL 3281209 (7th Cir. Aug. 2, 2021), *emergency application for writ of injunction denied*, No. 21A15 (U.S. Aug. 12, 2021); *W.D. v. Rockland County*, __ F. Supp. 3d __, No. 7:19-cv-2066, 2021 WL 707065, at *22–31 (S.D.N.Y. Feb. 22, 2021), *appeal docketed*, No. 21-551 (2d Cir. Mar. 9, 2021); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1085–87 (S.D. Cal. 2016); *Boone v. Boozman*, 217 F. Supp. 2d 938, 953–55 (E.D. Ark. 2002); *McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002); *Sherr v. Northport-E. Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 88 (E.D.N.Y. 1987); *C.F. v. N.Y.C. Dep't of Health & Mental Hygiene*, 139 N.Y.S.3d 273, 287–92 (N.Y. App. Div. 2020); *Brown v. Smith*, 235 Cal. Rptr. 3d 218, 224–25 (Cal. Ct. App. 2018); *Davis v. State*, 451 A.2d 107, 112 & n.8 (Md. 1982); *Wright*, 385 S.W.2d at 646–48; *Cude*, 377 S.W.2d at 819; *Bd. of Educ. v. Maas*, 152 A.2d 394, 405–08 (N.J. Super. Ct. App. Div. 1959), *aff'd mem.*, 158 A.2d 330 (N.J. 1960); *State ex rel. Dunham v. Bd. of Educ.*, 96 N.E.2d 413, 413 (Ohio 1951); *Sadlock v. Bd. of Educ.*, 58 A.2d 218, 222 (N.J. 1948); *Middleton v. Pan*, No. 2:16-cv-5224, 2016 WL 11518596, at *2, 7 (C.D. Cal. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 10543984 (C.D. Cal. July 13, 2017); *Schenker v. County of Tuscarawas*, No. 5:12-cv-1020, 2012 WL 4061223, at *12 (N.D. Ohio Sept. 14, 2012); *Brock v. Boozman*, No. 4:01-cv-760, 2002 WL 1972086, at *5–8 (E.D. Ark. Aug. 12, 2002); *cf. Brown v. Stone*, 378 So. 2d 218, 223 (Miss. 1979) (holding that religious exemption to Mississippi vaccination statute not only was not required by Free Exercise Clause but also violated Equal Protection Clause because it "would discriminate against the great majority of children whose parents have no such religious convictions").

New York's vaccination statute. *Smith*'s neutrality requirement means that a law must not "infringe upon or restrict practices because of their religious motivation." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993). General applicability is the closely related concept that government, "in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief." *Id.* at 531, 543. The touchstone in both inquiries is whether government has discriminated against religious conduct. *See id.* at 533–34, 542–43.

New York's amended vaccination statute easily satisfies these standards. Plaintiff's complaint does not allege that the statute is motivated by any anti-religious animus. And the statute applies equally to all students who can safely be vaccinated, regardless of whether they or their parents may object to vaccination on religious or nonreligious grounds. *See* N.Y. Pub. Health Law § 2164.

## II. The vaccination statute's medical exemption does not render New York's removal of the religious exemption unconstitutional.

### A. The medical exemption does not trigger strict scrutiny.

Plaintiff argues that the retention of a medical exemption in the vaccination statute (*id.* § 2164(8)) renders the removal of the religious exemption unconstitutional. *See* Compl. (Doc. 1) ¶¶ 453–61. But the vast majority of the above-cited decisions rejecting challenges to vaccination mandates noted that a medical exemption was available. *See Jacobson*, 159 U.S. at 12, 38–39; *Phillips*, 775 F.3d at 540; *Nikolao*, 875 F.3d at 313; *Mingo*, 419 F. App'x at 351; *F.F.*, 143 N.Y.S.3d at 742.[2]

---

[2] *See also Klaassen*, __ F. Supp. 3d __, 2021 WL 3073926, at *6; *W.D.*, __ F. Supp. 3d __, 2021 WL 707065, at *22; *Whitlow*, 203 F. Supp. 3d at 1083, 1086; *Boone*, 217 F. Supp. 2d at 942 n.6; *Sherr*, 672 F. Supp. at 87; *C.F.*, 139 N.Y.S.3d at 292; *Brown v. Smith*, 235 Cal. Rptr. 3d at 221; *Maas*, 152 A.2d at 398; *Brown v. Stone*, 378 So. 2d at 219; *Sadlock*, 58 A.2d at 219; *Middleton*, 2016 WL 11518596, at *2; *Brock*, 2002 WL 1972086, at *5–8.

Nor do the Supreme Court's recent decisions in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), or *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam), call for a different result. In *Fulton*, the Court noted that "[a] law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." 141 S. Ct. at 1877; *accord Cent. Rabbinical Cong. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014). In *Tandon*, the Court stated that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise" and that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." 141 S. Ct. at 1296.

These statements in *Fulton* and *Tandon* adopted views of the law that were previously set forth in two influential Third Circuit opinions by then-Judge Alito, *Fraternal Order of Police Newark Lodge No. 12 v. Newark*, 170 F.3d 359 (3d Cir. 1999), and *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004). Justice Alito wrote in *Blackhawk*, "A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." 381 F.3d at 209; *accord Fraternal Ord.*, 170 F.3d at 364–66.

Justice Alito's *Fraternal Order* and *Blackhawk* opinions provide detailed guidance for distinguishing exemptions that undermine the governmental interests at stake from those that do not. In *Fraternal Order*, the court ruled that a police department's refusal to grant its officers a religious exemption from a prohibition on beards triggered heightened scrutiny under the Free Exercise Clause, because the department exempted officers from that prohibition for medical

reasons, and the medical exemption undermined the governmental interest supporting the prohibition—"fostering a uniform appearance"—just as much as a religious exemption would. *See* 170 F.3d at 366. In *Blackhawk*, the court concluded that a state's denial of a religious exemption from a fee requirement for keeping exotic wildlife was subject to strict scrutiny because exemptions provided to zoos and circuses undermined the state interests at issue—raising money and discouraging the keeping of wild animals in captivity—to the same extent as would a religious exemption. *See* 381 F.3d at 211.

By contrast, explained Justice Alito in *Fraternal Order* and *Blackhawk*, the denial of a religious exemption in *Smith* from a law banning possession of controlled substances did not trigger strict scrutiny even though the law contained an exemption for medical uses: "The purpose of drug laws is to protect public health and welfare," but "when a doctor prescribes a drug, the doctor presumably does so to serve the patient's health and in the belief that the overall public welfare will be served." *Blackhawk*, 281 F.3d at 211; *accord Fraternal Ord.*, 170 F.3d at 366. "Therefore, the prescription exception in *Smith* did not undermine the purpose of the state's drug laws." *Blackhawk*, 281 F.3d at 211; *accord Fraternal Ord.*, 170 F.3d at 366. Similarly, Justice Alito noted that an exemption from the no-beard policy in *Fraternal Order* for undercover officers did not "undermine the [police] Department's interest in uniformity because undercover officers 'obviously are not held out to the public as law enforcement person[nel].'" 170 F.3d at 366 (citing a brief; alterations in original); *accord Blackhawk*, 281 F.3d at 211.

Justice Alito summed up the differences between exemptions that trigger strict scrutiny and those that do not as follows: "The prescription exception [in *Smith*] and the undercover exception [in *Fraternal Order*] do not trigger heightened scrutiny because the Free Exercise Clause does not require the government to apply its laws to activities that it does not have an interest in preventing." *Fraternal Ord.*, 170 F.3d at 366. "However, the medical exemption [in

9

*Fraternal Order*] raises concern because it indicates that the [police] Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not." *Id.*

The medical exemption in New York's vaccination statute is similar to the medical exemption in *Smith* and the undercover exemption in *Fraternal Order*. Indeed, far from undermining the interests behind New York's vaccination statute, the medical exemption advances them. Like the drug law upheld in *Smith*, the purpose of vaccination laws (*e.g.*, Wang, *supra*, at e62) "is to protect public health and welfare" (*Blackhawk*, 281 F.3d at 211). Just as is the case "when a doctor prescribes a drug," when a doctor certifies that it is medically contraindicated to vaccinate a child (as required to obtain the medical exemption, s*ee* N.Y. Pub. Health Law § 2164(8)), "the doctor presumably does so to serve the patient's health and in the belief that the overall public welfare will be served" (*Blackhawk*, 281 F.3d at 211).

Moreover, forcing vaccinations on those who cannot safely be vaccinated is obviously something that "the government . . . does not have an interest in" (*Fraternal Ord.*, 170 F.3d at 366). The Supreme Court explained in *Jacobson* that it "would be cruel and inhuman in the last degree"—and likely unconstitutional—to require vaccination of a person "if it be apparent or can be shown with reasonable certainty that he is not at the time a fit subject of vaccination, or that vaccination, by reason of his then condition, would seriously impair his health, or probably cause his death." 197 U.S. at 39. All fifty states therefore grant medical exemptions from their vaccination requirements. *See* Wang, *supra*, at e62.

In addition, even if the medical exemption could be construed as undermining the state interests at stake, it certainly does not do so "to at least the same degree as the covered conduct that is religiously motivated." *Cf. Blackhawk*, 381 F.3d at 209. For the number of New York students who claimed religious exemptions during the 2018–19 schoolyear was nearly six times

higher than the number who claimed medical exemptions. *See* Merri Rosenberg, *School districts can be fined for unvaccinated students*, N.Y. STATE SCH. BDS. ASS'N (Sept. 23, 2019), https://bit.ly/3lWzgCe. Thus, permitting a religious exemption poses a much greater threat to the state's interest in preventing the spread of disease than does allowing a medical exemption.

And that threat is magnified by the tendency of religious objectors to vaccination to cluster in particular communities. *See* Thomas May & Ross D. Silverman, *'Clustering of exemptions' as a collective action threat to herd immunity*, 21 VACCINE 1048, 1050 (2003), https://bit.ly/2TJONcX. Such clustering can lead to outbreaks of dangerous diseases, by causing the percentage of people who are vaccinated in a community to fall below the "herd immunity" level—the level necessary to prevent a disease from circulating. *See id.* at 1048–50. In New York, for example, clustering had caused at least 285 schools to fall below an 85-percent immunization rate by the 2013–14 schoolyear, and 170 of those schools fell below a 70-percent immunization rate. *See F.F.*, 114 N.Y.S.3d at 864. The percentage of a student body that needs to be vaccinated to achieve herd immunity is estimated to be 90 to 94 percent with respect to pertussis, 80 to 86 percent with respect to polio, and 75 to 80 percent with respect to diphtheria. *See* Pedro Plans-Rubió, *Evaluation of the establishment of herd immunity in the population by means of serological surveys and vaccination coverage*, 8 HUM. VACCINES & IMMUNOTHERAPEUTICS 184, 185 (2012), https://bit.ly/3AHjz68.[3]

In sum, New York has no real choice other than to allow medical exemptions. And religious exemptions threaten the state's efforts to prevent spread of disease much more than medical exemptions do, while also not serving the interest in protecting student health that an

---

[3] Tetanus (the fourth of the four diseases against which Plaintiff objects to having her child immunized) is not transmissible from person to person. *See* Tejpratap S.P. Tiwari et al., *Tetanus*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3jVsl9E (last reviewed Aug. 18, 2021).

exemption for those whose medical condition prevents them from being vaccinated does. Hence, the state's decision to retain medical exemptions but eliminate religious exemptions in no way reflects "a value judgment in favor of secular motivations, but not religious motivations." *Cf. Fraternal Ord.*, 170 F.3d at 366. The medical exemption therefore does not trigger strict scrutiny under the Free Exercise Clause.

### B. Even if the medical exemption triggered strict scrutiny, New York's vaccination statute would pass muster.

Even if strict scrutiny were to apply, New York's vaccination statute would satisfy the test. "A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (quoting *Lukumi*, 508 U.S. at 546). Just as secular exemptions may sometimes trigger strict scrutiny, so too they may sometimes prevent laws from surviving that review, whether by signifying that the government's interest is not truly compelling or by showing that the government's means are not adequately tailored. *See, e.g.*, *Fulton*, 141 S. Ct. at 1881–82; *Tandon*, 141 S. Ct. at 1296–97. And just as Justice Alito's opinions for the Third Circuit illuminate how to distinguish exemptions that trigger strict scrutiny from those that do not, a circuit-court opinion by then-Judge Gorsuch—*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)—illuminates how to distinguish exemptions that fail strict scrutiny from those that pass it.

In *Yellowbear*, Justice Gorsuch considered a prison inmate's claim under the Religious Land Use and Institutionalized Persons Act, a statute that subjects governmental conduct that substantially burdens inmates' religious exercise to a strict-scrutiny test similar to the one used when strict scrutiny applies under the Free Exercise Clause. *See id.* at 56 (citing 42 U.S.C. § 2000cc–1(a)). Justice Gorsuch recognized that "[a] law's underinclusiveness—its failure to cover significant tracts of conduct implicating the law's animating and putatively compelling

interest—can raise with it the inference that the government's claimed interest isn't actually so compelling after all." *Id.* at 60.

But, cautioned Justice Gorsuch, "it is important to acknowledge that inferences like these are not inevitable or irrebuttable." *Id.* at 61. "We know that few statutes pursue a single purpose at any cost, without reference to competing interests," he explained. *Id.* "Given this, it would be odd if the mere fact that a law contains some secular exceptions always sufficed to prove the government lacked a compelling interest in avoiding another exception to accommodate a claimant's religious exercise." *Id.* "If that were the case, the compelling interest test would seem nearly impossible to satisfy." *Id.*

Instead, noted Justice Gorsuch, "[a] government can rebut an argument from underinclusion by showing that it hasn't acted in a logically inconsistent way—by (say) identifying a qualitative or quantitative difference between the particular religious exemption requested and other secular exceptions already tolerated, and then explaining how such differential treatment furthers some distinct compelling governmental concern." *Id.* As an example, he cited a case holding that the governmental interest "in preventing eagle deaths isn't undermined simply because the government has restricted intentional eagle killings more than accidental ones," for "surely the government has a compelling interest in not subjecting citizens to laws they can't realistically avoid breaking." *Id.* (citing *United States v. Friday*, 525 F.3d 938, 958–59 (10th Cir. 2008)).

Here, there is no question that the governmental interest served by New York's vaccination statute—preventing dangerous diseases—is compelling. *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). And New York "hasn't acted in a logically inconsistent way" (*Yellowbear*, 741 F.3d at 61) by continuing to allow medical exemptions while removing the

13

religious exemption. There is both "a qualitative" and a "quantitative difference between the particular religious exemption requested and [the] secular exception[] already tolerated" (*id.*): Qualitatively, unlike a religious exemption, the medical exemption advances public health by protecting from the physical harm that vaccination would inflict on them those who cannot safely be vaccinated. Quantitatively, because the number of students who claim a religious exemption is nearly six times greater than the number who claim a medical one (*see* Rosenberg, *supra*), allowing religious exemptions poses a much greater threat to New York's efforts to maintain herd immunity and prevent the spread of disease.

Moreover, New York's "differential treatment" of medical and religious exemptions "furthers [a] distinct compelling governmental concern" (*Yellowbear*, 741 F.3d at 61): Allowing a medical exemption and eliminating the religious exemption both advance the state's interest in protecting from harm children whose medical conditions preclude them from being safely vaccinated. These particularly vulnerable children include those who have weakened immune systems or are allergic to vaccine components. *See, e.g.*, Ken Alltucker, *Do 'the right thing': People who can't get vaccinated during a measles outbreak rely on the healthy*, USA TODAY (Apr. 11, 2019), https://bit.ly/3cmjVFx. Just as "the government has a compelling interest in not subjecting citizens to laws they can't realistically avoid breaking" (*Yellowbear*, 741 F.3d at 61), so too it has a compelling interest in not attempting to vaccinate children whose medical condition precludes immunization—as well as safeguarding those vulnerable children's health by disallowing exemptions that could cause other children to infect them.[4]

---

[4] The fact that New York previously allowed a religious exemption does not make the state's interests here any less compelling: "Surely the granting of a religious accommodation to some in the past doesn't bind the government to provide that accommodation to all in the future, especially if experience teaches the accommodation brings with it genuine safety problems that can't be addressed at a reasonable price." *Yellowbear*, 741 F.3d at 58.

14

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

                Respectfully submitted,

| | |
|---|---|
| | /s/ Fernando Santiago |
| Richard B. Katskee | Fernando Santiago |
| (D.C. Bar No. 474250)* | (N.Y. Bar Roll No. 517516) |
| Alex J. Luchenitser | SANTIAGO BURGER LLP |
| (D.C. Bar No. 473393)* | 2280 East Avenue, 2nd Floor |
| Adrianne M. Spoto | Rochester, NY 14610 |
| (D.C. Bar No. 1736462)* | Tel: (585) 563-2400 |
| AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE | Fax: (585) 563-7526 |
| 1310 L Street NW, Suite 200 | *fernando@litgrp.com* |
| Washington, DC 20005 | |
| Tel: (202) 466-3234 | |
| Fax: (202) 466-3353 | |
| *katskee@au.org* | |
| *luchenitser@au.org* | |
| *spoto@au.org* | |
| * Motion for *pro hac vice* admission to follow. | |

                *Counsel for* Amici Curiae

Date: August 23, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021, the foregoing brief was filed using the Court's CM/ECF system, through which counsel for all parties will be served.

/s/ Fernando Santiago
Fernando Santiago
(N.Y. Bar Roll No. 517516)
SANTIAGO BURGER LLP
2280 East Avenue, 2nd Floor
Rochester, NY 14610
Tel: (585) 563-2400
Fax: (585) 563-7526
*fernando@litgrp.com*
